Hearing:                                          Paper No. 33
July 31, 1997                                     RFC

6/11/98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Boston Beer Company Limited Partnership
_____

Serial No. 74/464,118
_____

Laurence R. Hefter of Finnegan, Henderson, Farabow, Garrett & Dunner for Boston Beer Company Limited Partnership.

Robert J. Crowe, Senior Trademark Examining Attorney, Law Office 101 (Ronald E. Williams, Managing Attorney).
_____

Before Simms, Cissel and Hohein, Administrative Trademark Judges.

Opinion by Cissel, Administrative Trademark Judge:

On November 30, 1993, applicant filed the above-referenced application to register the words "THE BEST BEER IN AMERICA" on the Principal Register for "beverages, namely beer and ale," in Class 32. The application was based on applicant's claim of use since June of 1985. Applicant asserted that under the provisions of Section 2(f) of the Trademark Act, the words sought to be registered had become distinctive of its products.

The declaration of applicant's founder and President, James Koch, was submitted in support of the claim of acquired distinctiveness. Mr. Koch stated that the words sought to be registered have developed secondary meaning as a source-indicator for applicant's goods by virtue of extensive promotion and sales of beer under the mark since June of 1985. Since then, applicant has averaged annual advertising expenses of over ten million dollars, and according to Mr. Koch, annual sales of beer under the mark have been approximately eighty-five million dollars. Additionally, applicant had spent about two million dollars on promotions and/or promotional items which included the phrase "THE BEST BEER IN AMERICA."

Also submitted with the application and the declaration was a copy of an advertisement for Rolling Rock Bock beer, a product of one of applicant's competitors. The text of the advertisement relates a taste test the brewers of Rolling Rock Bock beer conducted in Boston. The test showed that the majority of those tested preferred Rolling Rock Bock beer over Samuel Adams beer. The ad closes with an invitation to sample "the beer that bested 'the best beer in America.'" Applicant contends that this is evidence that applicant's competitor regards "THE BEST BEER IN AMERICA" as applicant's trademark, and that it also shows "that applicant's competitor has not been harmed by applicant's

2

ownership of the mark."(p. 2 of applicant's February 18, 1994 submission.)

Registration was refused under Section 2(e)(1) of the Trademark Act on the ground that the words sought to be registered are merely descriptive of applicant's products, and because applicant had not established that the words have acquired distinctiveness.

The Examining Attorney took the position that the designation sought to be registered is merely descriptive of applicant's product because it is simply a claim that applicant's beer is the best beer in America. In particular, the Examining Attorney noted that

> "[a]pplicant's proposed mark has been used by others who have won the title 'The Best Beer in America' at the Great American Beer Festival and is used by others and recognized in regional beer tasting contests or named by magazines. The use of the term 'The Best Beer in America' is merely a title given to the winners in beer tasting contests and used by the applicant as advertisement and not as a source indicator."

Attached to the first Office Action were copies of excerpts from stories retrieved from the Nexis database of published articles. The stories include text to the effect that Anchor Steam beer was considered to be "the best beer in America" in 1983 by Quest magazine; that in 1984, Point beer from Wisconsin was rated as "the best beer in America" by a taste-testing panel; that also in 1984, brewers in Telluride, Colorado started a brewery "in hopes of brewing

the 'best beer in America'"; that in 1988, for the third year in a row, applicant's "Samuel Adams" beer was "picked as the best beer in America" at "The Great American Beer Festival" competition; that Alaskan brand beer "was selected as the best beer in America in a poll of 4,500 people attending the annual Great American Beer Festival in Denver in 1988"; that in the 1990 version of that competition, "Coors Brewing Co. won three medals for brewing some of America's best beers"; that in 1992, Chicago-based brewer "Kenneth Pavichevich may well be producing the best beer in America"; that in 1993, Pete Coors was described as "devoted to brewing the best beers in America"; and that Mr. Koch once stated that his "Samuel Adams Festival Lager" "was voted the 'Best Beer in America' before he even had a name for it."  He is quoted further as follows: "Being voted the best beer in America is gratifying, particularly with so many excellent American beers around."

The excerpted articles submitted by the Examining Attorney show the words sought to be registered used by applicant and others as a laudatory term in reference to superior beers produced by a number of different brewers in America, including applicant.  All such beers were either winners of comparison competitions, or simply beers which had been touted as the best in America by their makers or by others.

Responsive to the refusal to register, applicant submitted argument and additional evidence. The argument is basically that when beer purchasers are confronted with the words "THE BEST BEER IN AMERICA" on a label of a bottle of beer or in an advertisement for beer, "that phrase means 'Samuel Adams.'" (p. 3 of the November 10, 1994 response). Applicant contended that if "American Airlines" and "Best Products" can be registered even though these words can be used descriptively, then applicant's mark should be registered as well.

The evidence submitted with the response consisted of additional excerpts retrieved from the Nexis database. This evidence shows that applicant refers to its product as "the best beer in America," and that applicant often uses this designation in connection with promoting its beer as the winner of the annual beer competition in Denver. Typical examples from these excerpts include the following: "The most controversial result has been Koch's use of the phrase 'Best Beer in America,' a title he claimed (and trademarked) after his Samuel Adams Boston Lager won consumer-preference polls at the festival in 1985, '86, '87 and '89…"; "…Jim continues the Koch legacy of brewing the best beer in America…"; "…because for a dollar a bottle, you can get the best beer in America. That's cheap"; "In addition to being voted the Best Beer in America at the annual Great American

Beer Festival on four separate occasions,…"; "But Boston Beer founder and president Jim Koch said he believes that the investigation, which centers on the claim that Samuel Adams is 'the best beer in America,' was instigated by rival Brooklyn Brewery, which he said has been after him for several months to change his advertising… The Brooklyn brewer said he had been asked many times how he could be the winner when Samuel Adams promotes itself as such…"; "For the fourth time in five years, Samuel Adams Boston Lager was named the best beer in America at the 8th annual Great American Beer Festival"; and "…Samuel Adams has been picked as the best beer in America…."

On March 6, 1995, the Examining Attorney issued a final refusal under Section 2(e)(1), holding that applicant had not established that the proposed mark had become distinctive.  Included were copies of dictionary definitions of "best," "beer," and "America," as well as a plethora of copies of additional excerpts from published articles. These articles describe the fact that The Great American Beer Festival in Denver features winners in many different categories, that winners have included others in addition to applicant, and that "[w]inning a gold here means that a beer is the best of its kind in the States…"  The Examining Attorney noted the high degree of laudatory descriptiveness of the term sought to be registered and the fact that

because "the best beer in America" will always be a subjective designation, rather than one that can be verified by specific scientific criteria, beers made by a variety of brewers could be described with equal accuracy as the best beers in America. He concluded that applicant's evidence of acquired destinctiveness falls short of establishing secondary meaning for this descriptive terminology.

Applicant filed a notice of appeal on September 5, 1995. Attached to its brief, which was submitted on November 6, 1995, were additional exhibits. Rather than objecting to this evidence as untimely under Trademark Rule 2.142(d), the Examining Attorney requested that the Board suspend action on the appeal and remand the application to him for consideration of the new evidence. The Board granted the request.

On April 24, 1996, the Examining Attorney issued another Office Action dealing in detail with the additional evidence submitted by applicant with its brief, and concluding that it did not change his determination that the term sought to be registered is merely descriptive and has not become distinctive of applicant's beer. Included with the Office Action were additional excerpts showing the use of what he argued were clearly descriptive terms, e.g., "America's best micro-brewed beer"; "the best beer anywhere"; the "World Beer Championship--the definitive

consumer oriented judging of the best beers in the world…";
and "the LI Brewing Company hosts a <u>Best Beers in America</u>
<u>Festival</u>…." (emphasis in original).  Other excerpts included
with the Office Action relate to applicant's marketing
strategy and how the term sought to be registered was
selected and used following applicant's awards at the
aforementioned annual beer competition in Denver.

Following the April 24, 1996 Office Action responding
to applicant's new evidence, applicant was allowed by the
Board to file a supplemental brief, which it did on August
27, 1996.  Then, on November 18, 1996, the Examining
Attorney again requested suspension of action on the appeal
and remand of the application to him, this time for the
introduction into the record of recently discovered evidence
and the issuance of a refusal to register based on
genericness.  The request was granted, and on December 9,
1996, he issued an Office Action refusing registration under
Sections 1, 2 and 45 of the Trademark Act on the ground that
the term sought to be registered is generic and, hence, is
incapable of functioning as a trademark to identify the
source of applicant's goods.  The Examining Attorney
concluded that the term is the name of a genus of goods,
namely "beers brewed in America that have won taste
competitions or were judged best in taste tests."  Copies of
printouts from applicant's Internet Web site were offered to

show that applicant adopted the designation after it had won such competitions.  Copies of articles from printed publications were also submitted.  The Examining Attorney contends that these articles show that a winner of a taste test is often referred to as "the best beer in America" or as the "best beer."  In one article from the May 13, 1996 issue of <u>Advertising Age</u>, applicant's director of brand development is quoted as saying, in reference to a contest for home-brewed beer, "We're convinced that the best beer in America is being brewed in people's kitchens."

On February 18, 1997, applicant filed a second supplemental brief to address the refusal based on genericness and the evidence the Examining Attorney submitted in support of it.  With this brief, applicant submitted still more evidence, including information about The Great American Beer Festival and other such competitions; information about the numerous different styles of beer; a list of purportedly registered trademarks featuring either or both the words "BEST" and "AMERICA"; and copies of the complete information about those registrations from a commercially available automated data bank. Applicant argued that these materials establish that there is no single beer which is awarded the title of "Best Beer in America," and that it should be granted registration of the term.

Additionally, applicant submitted a copy of an entry from <u>McCarthy's Desk Encyclopedia of Intellectual Property,</u> (1993 edition, BNA). On page 93, under the heading "descriptive mark," Professor McCarthy states that "…words such as BEST, SUPERIOR, PREFERRED, and PLUS are usually classified as descriptive."

The Examining Attorney filed his appeal brief on April 28, 1997. Responsive to the brief submitted by the Examining Attorney, applicant requested permission to file a third supplemental brief, which was actually a combination of a reply to the Examining Attorney's brief combined with a motion to strike part of that brief. The Board granted applicant's request to file a third supplemental brief, and on June 2, 1997, applicant filed argument on the issue of genericness and on the merits of its motion to strike pages 5 through 20 of the Examining Attorney's appeal brief. The argument for the motion to strike is that under Trademark Rule 2.142(f)(1), the Examiner was limited to responding to the issues discussed in the second supplemental brief applicant had filed, and that brief dealt only with the newly raised ground of genericness, whereas the pages of the Examining Attorney's brief to which applicant objects are argument on the issues of descriptiveness and acquired distinctiveness.

In its third supplemental brief, or reply brief, applicant then proceeded to argue that its mark is not generic.  Applicant again points to the information submitted with its second supplemental brief, and notes that the beer competitions and taste tests evaluate beer according to the many different beer categories which are reflected in the marketplace.  Applicant repeats the argument that it was never given an award as the best beer in America at the Great American Beer Festival because there is no single best beer; rather, awards were given only for the best beers in particular categories, such as best craft lager, best ice beer, and best imported lager.

On June 10, 1997, the Board advised applicant and the Examining Attorney that the Board's ruling on applicant's motion to strike would be deferred until the Board took up the case for final decision, but the Examining Attorney was nonetheless provided with a copy of the motion.  At applicant's request, an oral hearing on all the issues on appeal, including descriptiveness, acquired distinctiveness, and genericness, was conducted on July 31, 1997.  Both the Examining Attorney and counsel for applicant presented their arguments to the Board at that time.

We turn first to applicant's motion to strike portions of the Examining Attorney's brief.  Paragraph (f)(4) of Trademark Rule 2.142 does limit an Examining Attorney's

response to a supplemental brief filed by an applicant to the arguments made by applicant in its supplemental brief, but that paragraph is plainly based on the assumption that the remand was ordered after the main briefs had already been filed by both applicant and the Examining Attorney. Paragraph (f)(1) states that during an appeal, the Board may suspend and remand when it becomes apparent that an issue not previously raised may render the proposed mark unregistrable.  The next four paragraphs provide for what will happen in the event of such a remand.  In the instant case, although applicant had filed its brief on appeal and two supplemental briefs, the remand was ordered before the Examining Attorney had yet filed his main brief on the appeal.  Here, applicant's main brief in effect consists of its initial brief and its first two supplemental briefs.  To limit the Examining Attorney to discussion of only the additional issues raised for the first time after applicant's main brief had been filed, without ever according him the opportunity to present arguments in support of the issues on appeal under Sections 2(e)(1) and 2(f) of the Act, would be patently unreasonable and would clearly contravene the requirement, under Trademark Rule 2.142(b)(1), that the Examining Attorney file "a written brief answering the brief of applicant."

The rule limiting the response of the Examining Attorney to a supplemental brief was plainly never intended to preclude him from presenting a response to the main brief filed by applicant. Despite repeated suggestions at the oral hearing that counsel withdraw the motion to strike the Examining Attorney's brief, he declined to do so, choosing instead to rest on what he termed a "technical" objection. The motion is wholly without merit, and it is accordingly denied.

As a postscript to our discussion of the procedural history of this matter described above, we note that in several respects, this case is not a good example of proper practice before the Board. After the remand for refusal on the ground of genericness, applicant submitted a second supplemental appeal brief, and then the Examining Attorney submitted his brief on appeal. What should have happened, instead, is that the Examining Attorney, upon remand, should have issued a new, nonfinal action asserting the refusal based on genericness; applicant should have filed a response to the refusal; the Examining Attorney should have issued a new action making the genericness refusal final and also asserting the other grounds for final refusal; the Board should have allowed applicant time to file a supplemental appeal brief directed to the new ground for final refusal; and then the Board should have sent the case to the

13

Examining Attorney for his appeal brief.  All the issues were ultimately fully argued and briefed, but the same result would have been achieved with greater economy and less confusion if the Board had insisted that both applicant and the Examining Attorney follow the proper procedure.

Notwithstanding the protracted prosecution history of this case, the issues before us on appeal are whether "THE BEST BEER IN AMERICA" is a generic term and therefore does not indicate the source of applicant's beer and distinguish it from similar products made by others, or, in the alternative, whether the term is merely descriptive of applicant's goods within the meaning of Section 2(e)(1), and, if this is so, whether it is nonetheless registrable under the provisions of Section 2(f) because it has acquired distinctiveness through use and promotion in connection with applicant's products.

We will first consider the issue of mere descriptiveness, which will lead us into the question of genericness, and then we will turn to distinctiveness under Section 2(f).

The fact that the application as originally filed sought registration under Section 2(f) constitutes an admission of the descriptiveness of the term.  In re Leatherman Tool Group, Inc., 32 USPQ2d 1443 (TTAB 1994). The issue of descriptiveness has therefore been conceded by

applicant.  Even if this had not been conceded, the evidence of record, especially the dictionary definitions submitted by the Examining Attorney and the vast majority of the excerpts from the Nexis database, both those submitted by the Examining Attorney and those made of record by applicant, clearly establish that "THE BEST BEER IN AMERICA" is merely descriptive of beer.  It is a laudatory expression used to tout the superior quality of applicant's product. In the same sense that "AMERICA'S BEST POPCORN!" and "AMERICA'S FAVORITE POPCORN!" were held to be only laudatory, comparative, descriptive designations, "THE BEST BEER IN AMERICA" immediately conveys to prospective purchasers that applicant claims its beer is superior to other beers in this country.  See:  In re Wileswood, Inc., 201 USPQ 400 (TTAB 1978).

Admittedly, there is no universal standard against which beers are measured to determine their relative merits. Nevertheless, while there is no single competition, such as the Great American Beer Festival or any other taste test, which determines which beer is awarded the title of "the best beer in America," this fact does not alter our holding that the term is merely descriptive because it is only laudatory.

Further, for applicant to argue that its mark is not descriptive of its beer because there is not one beer which

15

is the best in the country is disingenuous in view of the fact that applicant itself began using the expression only after it had begun to win beer competitions and awards.

In summary on this point, this record makes it clear that the designation "THE BEST BEER IN AMERICA" is simply a claim of superiority, i.e., trade puffery.

Our conclusion that the designation is merely descriptive is not a finding that it is generic, however, at least in the traditional sense of being the name for the product. A well settled test for genericness was enunciated by our primary reviewing court in H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528 (Fed. Cir. 1986). The test has two elements. The first is to identify the genus or class of goods at issue. The second element is to determine if the relevant purchasing public understands the designation sought to be registered primarily to refer to that genus or class of products. In that case, "FIRE CHIEF" was held not to be generic for a magazine directed to the field of firefighting, because there was no evidence that the relevant purchasing public refers to a class of fire fighting publications as "FIRE CHIEF," and also because the term sought to be registered was neither the name of the firefighting industry nor about the firefighting industry.

16

In the instant case, the Examining Attorney's contention that "THE BEST BEER IN AMERICA" is generic for applicant's goods fails the test as well.  Although the Examining Attorney would have us find that the genus or class of goods in question is "beers brewed in America that have won taste competitions or were judged best in taste tests," we cannot reach this conclusion.  The genus or category of goods here is aptly stated by applicant in its application:  "beverages, namely beer and ale."  To contend that there is a "subclass" of beer which is known as or referred to as "beers brewed in America which have won taste competitions or were judged best in taste tests" stretches the limits of our language and is inconsistent with common usage.  The product here is "beer," not "beers brewed in America that have won taste competitions or were judged best in taste tests."  Beer is a beverage which is purchased by ordinary consumers with common understandings of the usual meanings of the words in our language.  These people know that "beer" and "ale" are words naming types of alcoholic beverages.  If one were to ask such a person what kind of beer he or she preferred, the likely response would be the name of a particular brand or style of beer, such as Samuel Adams or lager, for example.  In contrast, if such a person were asked what kind of "beer brewed in America that has won taste competitions or was judged best in taste tests" he or

17

she preferred, such a person would probably wonder what the questioner had been drinking.  The sixteen-word designation asserted by the Examining Attorney as the genus or category for applicant's goods is simply not used in ordinary parlance as the name for a class or genus of beverages.  The evidence in this record establishes that "THE BEST BEER IN AMERICA" is a highly descriptive designation for these goods, in that it is a laudatory claim that the beer so described is comparatively superior, but the evidence simply does not show that the designation is used or understood as the name for a class of such products.

Just because the Ginn analysis does not lead to the conclusion that the words here sought to be registered are generic does not mean that they are registrable, however. As the Court there noted, in most cases involving trademarks, it is difficult to postulate a general rule that will uniformly yield the correct result.  Rather, our determinations must be made on a case-by-case basis in light of the particular designation for which registration is sought and the record in the application which is under consideration.

Our holding in the instant case is based on analysis which is essentially no different from that of the Court of Customs and Patent Appeals more than half a century ago in Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 53

USPQ 369 (CCPA 1942).  There the applicant sought to register the words "Handkerchiefs of the Year" for handkerchiefs.  On page 372 of that opinion, the predecessor to our primary reviewing court noted with approval the conclusion of the examiner in that case that some terms or designations are "merely laudatory expressions, descriptive of the character or quality of the subject concerned ... and not registrable as trademarks, for the simple reason that they are inherently incapable of functioning as such."  The Court went on to state that such expressions are used and intended to indicate that the goods in connection with which they are used possess qualities which raise them above other goods of the same type, and that such phrases or terms cannot be exclusively appropriated by a single manufacturer of those goods.  The Court concluded that "[i]n the final analysis such expressions as we are here discussing with relation to objects of trade are a 'puffing of wares' and are intended to call attention to the superiority of the advertised goods."  The Court held that such common expressions cannot function as trademarks because they "can indicate nothing but high quality," and thus "surely would not be indicative of origin to the purchasing public."  See also:  1 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, Section 11:17 at page 11-22 (4th ed. 1997).

In the instant case, the designation applicant seeks to register is in the same category.  While it does not fit squarely into the category of generic terminology as defined by the test in the Ginn case, supra, when the particular designation sought to be registered and the evidence showing how the designation is used by applicant and by others are considered, it is apparent that registration is not appropriate.  The designation "THE BEST BEER IN AMERICA" is not what we would categorize as generic, but neither is it a term which can acquire distinctiveness.  It is and will remain a laudatory designation, descriptive of the claimed quality of any beer in connection with which it is used, and any brewer should be free to make the same claim or boast about his own beer.  Professor McCarthy has noted that "as a matter of competitive policy, it should be close to impossible for one competitor to achieve exclusive rights" in common phrases or slogans.  1 J. McCarthy, McCarthy on Trademarks and Unfair Competition, Section 7:23 at page 7-34 (4th ed. 1997).  As the Examining Attorney noted in his first Office Action, the designation is used by applicant in promoting its beer, but not as an indicator of the source of the goods.

We note for the record that we are not resurrecting the discredited notion that a term can be the "apt descriptive name" for a product, and therefore be "so highly descriptive

as to be unregistrable." See: In re Rickett & Colman, North America, Inc., 18 USPQ2d 1389 (TTAB 1991); and In re K-T Zoe Furniture Inc., 16 F.3d 398, 29 USPQ2d 1787 (Fed. Cir. 1994). Instead, in the instant case, we are finding that this designation inherently cannot function as a trademark. See: Burmel Handkerchief, supra. These words, as well as such other expressions as "Best Car in America," "Best Hotel in the State" and "Best Restaurant in Town," for example, are slogans which can be referred to as mere "puffery." Such claims of superiority should be freely available to all competitors in any given field to refer to their products or services, subject to whatever limits the law may impose on truthful advertising and unfair competition.

In spite of the nature of this designation, applicant maintains that the words have acquired distinctiveness within the meaning of Section 2(f) of the Trademark Act. Even if we were to find this expression to be capable of identifying applicant's beer and distinguishing it from beer made or sold by others, we also would find, in view of the very high degree of descriptiveness which inheres in these words, that applicant has failed to establish secondary meaning in them as an identification of source.

To establish secondary meaning, applicant would have to show that the significance of "THE BEST BEER IN AMERICA" in the minds of the beer-consuming public is no longer the

21

claim of national superiority for the product, but that instead, the designation functions as an indication of the source of applicant's beer. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 39 USPQ 296 (1938). This is a question of fact, and the burden is on applicant to support the claim by a showing of the preponderance of the evidence. Yamaha International Corp. v. Hoshino Gakki Co. Ltd., 840 F.2d 1573, 6 USPQ2d 1001 (Fed. Cir. 1988).

Of particular significance to the case before us is the principle that the greater the degree of descriptiveness a term or expression has, the more proof is required to establish acquired distinctiveness. In re Packaging Specialists, Inc., 221 USPQ 917 (TTAB 1984).

Notwithstanding the substantial amounts of money spent promoting applicant's beer as the best beer in America, and the large quantity of beer and promotional items bearing this designation that applicant has sold, applicant has not established that, to the relevant purchasing public, the designation has lost its descriptive significance as a laudatory claim of comparative superiority and has become an indication of the source of applicant's beer.

This conclusion is based not just on the evidence that others are using the designation in a descriptive sense, but also on applicant's own use of the words descriptively. The many examples discussed above of the excerpts from

publications put in the record by both applicant and the Examining Attorney show not just that others use the term descriptively, but that applicant itself, in printed materials as well as in interviews with the press, has used the words it asserts to be its trademark in their ordinary descriptive senses to refer to the comparative superiority of its goods. As Judge Markey stated in Levi Strauss & Co. v. Genesco, Inc., 840 F.2d 1579, 222 USPQ 939, 940 (Fed. Cir. 1984), "When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctivenesss on which purchasers may rely is lacking under such circumstances."

It is significant that the record in the case at hand is devoid of direct evidence that anyone in the general beer-buying public perceives the designation applicant seeks to register as indicating the source of the beer bearing it, rather than simply a claim that applicant's beer is the best in America. Applicant recounts a great deal of information concerning the substantial extent of promotion of the designation in connection with Samuel Adams beer, as well as the concomitant volume of sales of beer in containers bearing the words sought to be registered. Notwithstanding applicant's calculation of the large number of "commercial

impressions" applicant's advertising is claimed to have generated over the years applicant has promoted its beer as the best beer in America, the record provides scant support for the conclusion that consumers perceive the designation "THE BEST BEER IN AMERICA" as a source indicator, and not just as applicant's boast that its beer is the best in the country.

Moreover, even if the record showed that consumers actually believe that applicant's beer is the best in America, whether or not they think that the claim is a boast, a fact, or a title or award from a particular competition or certifying entity, this fact would not entitle applicant to the registration it seeks under Section 2(f). Under these circumstances, the designation still would not have lost its merely descriptive, laudatory significance.

Applicant argues that the Rolling Rock advertisement it made of record in connection with its initial Section 2(f) claim shows that even competitors regard "THE BEST BEER IN AMERICA" as a trademark for applicant's beer. We disagree. We interpret the reference in the competitor's advertisement as a snide remark, made at applicant's expense in response to the perceived snub in the Samuel Adams advertisement quoted by Rolling Rock. The Rolling Rock advertisement pokes fun at applicant for calling its beer "the best beer

in America," when, in fact, the Rolling Rock comparison test conducted on applicant's home turf found the Rolling Rock brew to be preferred by the majority of those participating in the test. We view this advertisement as yet another example of the widespread descriptive use of the designation, and not as evidence of recognition of it by applicant's competitors as applicant's trademark.

In a similar sense, the quote from the article in the Providence Journal (applicant's exhibit K), wherein Mr. Owston states that his company, Coors, chose to compare its beer to Samuel Adams because "it's advertised as 'the best beer in America'" does not show that the designation is regarded as a trademark by anyone other than applicant. Instead, it is clear to us that applicant's competitors were trying to disprove applicant's claim of national superiority, with which applicant has "advertised," i.e., promoted, its beer. The essence of Mr. Owston's message is that Coors wants to compare its product with applicant's because applicant claims that its beer is the best in America. This is quite different from applicant's analysis of what he said.

A final argument applicant makes is that it consistently uses the designation it seeks to register as a trademark. As we noted above, the record shows applicant's use of the words it seeks to register not just in the manner

of a trademark, but also in their ordinary descriptive senses. In any event, the fact that applicant frequently uses the designation as one would use a trademark is not determinative of the outcome in this appeal. The issues are not whether applicant uses the phrase as a trademark or whether applicant wants to secure for the designation the protections afforded by registering it as its trademark. The issue is instead whether these laudatory words, which are highly descriptive of the claimed superior quality of applicant's goods, indicate the source of applicant's goods, or whether all they do is tout applicant's goods as the best in America. Based on the record in this appeal, we hold the latter to be the case.

Accordingly, although the designation sought to be registered is not the generic name for beer and ale, it is nonetheless unregistrable. The refusal to register is affirmed.

R. F. Cissel

G. D. Hohein
Administrative Trademark Judges,
Trademark Trial and Appeal Board

**Ser No.** 74/464,118