Paper No. 19
HRW

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB   11/2/98

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Web Communications
_____

Serial No. 74/588,773
_____

Anthony V. Lupo of Arent Fox Kintner Plotkin & Kahn for applicant.

Fred Mandir, Trademark Examining Attorney, Law Office 105 (Thomas G. Howell, Managing Attorney).
_____

Before Quinn, Chapman and Wendel, Administrative Trademark Judges.

Opinion by Wendel, Administrative Trademark Judge:

Web Communications filed an application to register WEB COMMUNICATIONS on the Principal Register for "consulting services to businesses and individuals who want to establish a site on a global computing network." Although originally filed as an intent-to-use application, the application was subsequently amended to allege use and to seek registration on the Supplemental Register.

Registration has been finally refused under Section 23 of the Trademark Act on the ground that the proposed mark WEB COMMUNICATIONS is generic and, thus, incapable of distinguishing applicant's services from those of others.

Applicant and the Examining Attorney have filed briefs, but no oral hearing was requested.

As background for the general meaning ascribed to the term "Web communications," the Examining Attorney has submitted several excerpts from the Nexis database which show generic use of "Web communications" or "Web communication" in reference to transmissions on the Web.[1] Examples include (emphasis added):

> ...staff in Tucson have already undergone an extensive training program created by AlphaGraphics Inc.,... covering web site services marketing and design, Internet technology and effective *web communication*. (Business Wire, July 28, 1997)

> ...spending several hours trawling the Web looking at all the content you can find in a specific category provides an insight into *Web communications* about that category, even if there are no specific sites to discuss. (New Media Age, August 7, 1997).

> Presenters will examine how technology enhances communication between students and teachers. Examples will include use of technology to increase equity, *Web communications*, televideo and desktop conferencing, and to extend traditional office hours.(News & Record (Greensboro, NC, May 11, 1997).

---

[1] The Examining Attorney has submitted a definition from The Internet Dictionary (1995) of the word "Web" as "the most commonly used name for the *World Wide Web*".

Applicant's services are directed to the assistance of businesses and individuals "who want to establish a site on a global computing network."  In its specimens, applicant more fully describes its services as providing "easy-to-use tools, resources and services for publication and communications via the World Wide Web, FTP and electronic mailing lists."  Thus, the Examining Attorney takes the position that the relevant public would understand the term "Web communications", when used by applicant, primarily to refer to the fact that its consulting services include, as a significant feature, assisting its customers in communications on the Web.  As such, he contends, applicant's services are in the field of "Web communications" and the proposed mark is generic.

Applicant argues that although it may be using the word "Web" in a generic sense, the word "Communications" is not generic for consulting services of the type provided by applicant.  Instead, according to applicant, WEB COMMUNICATIONS is a distinctive unitary term[2] which is fully

---

[2] Applicant has also introduced copies of previously issued third-party registrations containing either the word "Web" or "communications", without disclaimers thereof, and argued that the present refusal of registration is inconsistent with prior Office action.  But since none of the previously issued registrations is for WEB COMMUNICATIONS, which we agree with

capable of functioning as a mark when used in connection with applicant's consulting services related to helping its customers establish sites on the Web.  Even if the Examining Attorney has shown that "Web communications" is merely descriptive, or generic, when used in connection with transmissions on the Web, applicant insists this is not the service provided by applicant.  Applicant only proffers consulting services which enable others to set up Web sites.

Generic terms are by definition incapable of indicating source and thus can never attain trademark status.  In re Merrill, Lynch, Pierce, Fenner, and Smith Inc., 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987).  The critical issue in determining whether a term is generic is whether the members of the relevant public primarily use or understand the term sought to be registered to refer to the genus of goods or services in question.  H. Marvin Ginn Corp. v. International Association of Fire Chiefs Inc., 782 F. 2d 987, 228 USPQ 528 (Fed. Cir. 1986).  Evidence of the public's understanding of a particular term may be obtained from any competent source, including listings in

applicant is a unitary term, the third-party registrations are irrelevant.

dictionaries, trade journals, newspapers, and other publications.  In re Merrill Lynch, 4 USPQ2d at 1143.

We agree with applicant that its services in the broadest sense would be considered "consulting services." But there are many varieties of consulting services and each would necessarily be further identified as to the particular subject or focus of the services being offered. Here applicant has described a major focus of its services in the specimens of record as "publication and communication via the World Wide Web.... ."  Applicant's services enable its customers to achieve this communication by assisting them in setting up their own Web sites.

The Examining Attorney has demonstrated, by evidence obtained from the Nexis database, that "Web communications", or "Web communication", is a term in general use to describe just such "communication...via the Web."  Thus, we agree with the Examining Attorney that members of the relevant public, i.e., those who would be interested in communication on the Web, primarily would understand the term "Web communications" as a reference to the type of consulting service being offered, rather than the source of the service.  The services are consulting services in the field of "Web communications".  The situation here is not dissimilar to that in In re Harcourt

Brace Jovanovich, Inc., 222 USPQ 821 (TTAB 1984), in which we held the term LAW & BUSINESS to be incapable of distinguishing the applicant's services of arranging and conducting business law seminars from those of others, the term being no more than a designation of the subject matter of these seminars.

Furthermore, the fact that the term "Web communications" is also used to refer to communication on the Web in itself does not detract from its generic significance in relation to consulting services in this field. See In re Reckitt & Colman, North America Inc., 18 USPQ2d 1389 (TTAB 1989)[term "Perma Press" generic not only for a type of fabric but also for soil and stain removers designed for use on this particular type of fabric]. In addition, since the term "Web communications" has been shown to be used as a generic unitary phrase in the relevant field, we need not consider the generic significance of the word "communications" alone. See In re Shiva Corp., ___USPQ2d ___ (TTAB 1998)[TARIFF MANAGEMENT found to be a phrase used in the trade to describe computer programs for selecting least expensive long distance carrier].

Looking at the issue of genericness from a slightly different perspective, in a recent decision by the Board,

In re Central Sprinkler Co., ___USPQ2d ___ (TTAB 1998)[ATTIC held to be generic term for fire sprinklers for protection of attics], we held that in determining whether a term is generic in reference to the goods or services involved, consideration must be given to the fact that a product or service may fall not only into a broad category, but also into a narrower category within this broad category.  Thus, while the broad category of services in the present case may arguably be consulting services, there are clearly narrower categories within this broad category, directed to the type or focus of the particular consulting service in question, the designations of which would also be generic terms.  Here "Web communications" serves as just such a generic designator of the focus of applicant's consulting services.

Accordingly, we find the term WEB COMMUNICATIONS to be generic and incapable of distinguishing applicant's services from those of others.

Decision: The refusal to register on the Supplemental Register is affirmed.

T. J. Quinn

B. A. Chapman

H. R. Wendel
Trademark Administrative Judges,
Trademark Trial and Appeal Board