THIS OPINION IS A PRECEDENT
OF THE TTAB

Mailed:  March 22, 2007
PTH

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re The Council on Certification of Nurse Anesthetists
_____

Serial No. 75722091
_____

Julia M. Chester of Sidley Austin Brown & Wood LLP for The
Council on Certification of Nurse Anesthetists.

Yong Oh (Richard) Kim, Trademark Examining Attorney, Law
Office 115 (Tomas Vlcek, Managing Attorney).
_____

Before Seeherman, Hairston and Cataldo, Administrative
Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

The Council on Certification of Nurse Anesthetists seeks

registration on the Principal Register pursuant to Trademark

Act Section 2(f) of the designation CRNA as a certification

mark for the following services in International Class B:

> The rendering and administering by certified
> registered nurse anesthetists of anesthesia and
> anesthesia-related care in performing and
> documenting a preanesthetic assessment and
> evaluation of the patient, namely requesting
> consultations and diagnostic studies; selecting,
> obtaining, ordering and administering preanesthetic
> medications and fluids; obtaining informed consent
> for anesthesia; developing and implementing an

anesthetic plan; initiating general, regional and local anesthesia, and sedation; selecting, applying, and inserting appropriate non-invasive and invasive monitoring modalities for continuous evaluation of the patient's status; selecting, obtaining, and administering the anesthetics, adjuvant and accessory drugs, and fluids necessary to manage the anesthetic; managing a patient's airway and pulmonary status using current practice modalities; managing emergence and recovery from anesthesia by selecting, obtaining, ordering, and administering medications, fluids, and ventilatory support; discharging the patient from a postanesthesia care area and providing postanesthesia follow-up evaluation and care; implementing acute and chronic pain management, administration of emergency fluids and drugs, and using basic or advanced cardiac life support techniques; additional nurse anesthesia responsibilities, namely, administration and management, quality assessment, education and teaching, research, committee appointments, interdepartmental liaison and clinical administration and oversight of other departments.[1]

Applicant's certification statement reads as follows:

"The certification mark, as used by an authorized person, certifies that the person is a registered nurse who has met certain predetermined and objective standards and requirements for providing such nurse anesthesia services."

---

[1] Application Serial No. 75722091, filed June 4, 1999, alleging dates of first use of May 1957.

The trademark examining attorney refused registration on the ground that applicant's use of the designation CRNA on the specimens of record conveys only the commercial impression of a title or degree and, thus, does not function as a certification mark. In addition, the examining attorney refused registration on the ground that the designation CRNA is either a generic term for the identified services, or in the alternative, that the designation is at least merely descriptive of such services and the showing of acquired distinctiveness furnished by applicant is insufficient to establish that CRNA has become distinctive of the services.

When the refusals were made final, applicant appealed. Applicant and the examining attorney have filed briefs; applicant filed a reply appeal brief.

<u>Refusal Based on Failure of CRNA to Function as a Certification Mark</u>

<u>Summary of arguments</u>

The examining attorney essentially contends that the designation CRNA, as used on the specimens of record, is not used as a certification mark, but only identifies a title or degree conferred, and thus CRNA fails to function as a certification mark, and is not registrable as a mark under Sections 4 and 45 of the Trademark Act. The examining attorney maintains that the question whether the designation CRNA functions as a certification mark is determined by the

specimens of use, and that none of the various items submitted as specimens by applicant show use of CRNA as a certification mark. Rather, according to the examining attorney, at most, certain of the specimens show use of CRNA as the title of the person whose name is followed by the designation.

Applicant, on the other hand, argues that it has submitted many specimens that show use of CRNA as a certification mark. According to applicant, the use of CRNA on these specimens is not merely as a title or degree, but rather an indication that the services set forth in the application are rendered by a person certified by applicant. Applicant argues that the specimens which it has submitted are not unlike specimens which the USPTO found to be acceptable in other certification mark applications. In this regard, applicant has submitted copies of five third-party certification mark registrations, along with copies of the specimens submitted in connection with the respective underlying applications for registration.

Discussion and Decision

A certification mark is defined in Section 45 of the Trademark Act, 15 U.S.C. §1127, as follows:

The term "certification mark" means any word, name, symbol, or device, or any combination thereof—

   (1)   used by a person other than its owner, or

   (2)   which its owner has a bona fide intention to permit a person other than the owner to use in commerce and

4

>files an application to register on the principal
register established by this Act, to certify regional
or other origin, material, mode of manufacture,
quality, accuracy, or other characteristics of such
person's goods or services or that the work or labor
on the goods or services was performed by members of a
union or other organization.

As explained in TMEP §1306.03 (Fourth Edition 2005) (case citations omitted):

>A certification mark may be used to certify that the
work or labor on the goods or services was performed
by a member of a union or other organization, or by
a person who meets certain standards and tests of
competency set by the certifier.  15 U.S.C. §1127.
The certifier does not certify the quality of the
work being performed, but only that the work was
performed by a member of the union or group, or by
someone who meets certain standards.  Used in this
manner, the mark certifies a characteristic of the
goods or services.  Whether or not specific matter
functions as a certification mark depends on whether
the matter is used in connection with the goods or
services in such a manner that the purchasing public
will recognize it, either consciously or
unconsciously as a certification mark.

>Occasionally, it is not clear whether a term is
being used to certify that work or labor relating to
the goods or services was performed by someone
meeting certain standards or by members of a union
or other organization to indicate membership or
whether the term is merely being used as a title or
degree of the performer to indicate professional
qualifications.  Matter that might appear to be
simply a title or degree may function as a
certification mark if used in the proper manner.

>Professor J. Thomas McCarthy explains proper use of a

certification mark at 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u>, §19.93 (4th ed. November 2006) as follows (footnotes omitted):

For a symbol to be registrable as a certification mark, that symbol must, by its nature and use, function such that buyers are likely to recognize the symbol as a symbol of guarantee or certification. For example, a designation indicating that a merchant is the recipient of a title or degree must be used in such a way as to indicate certification. But the use of such a designation in a way that would not normally be perceived by consumers as a certification mark will not be registrable.

…..

The rationale of the Patent and Trademark Office is that titles and degrees (such as Professor, Professional Engineer, Certified Dietician, JD, CPA, and MD) are not used to certify goods and services when used only to convey "personal information about the individual and certify some characteristic only about the individual's achievement" rather than certifying the characteristics of services rendered by that individual. The focus should be on the manner of use of the alleged mark by persons whose work is allegedly certified and the likely perception of that use by customers of those services.
A certification mark for goods must be used in a manner analogous to that required for trademarks, namely on the goods or their containers or on displays associated therewith. Similarly, a certification mark for services must be used in a manner analogous to that of a service mark, namely in the sale or advertising of the services rendered.

At the outset, we note that the examining attorney does not dispute that applicant is engaged in certifying nurse anesthetists in anesthesia and anesthesia-related care. However, the question whether the designation applicant seeks to register serves as a certification mark must be determined on the basis of the manner and context in which the designation is used, as revealed by the specimens and other literature of record, and the significance which the

6

designation is likely to have to members of the relevant public because of the manner in which it is used. In order for an applicant to obtain registration of a certification mark, it should be clear from the record that the circumstances surrounding the use and promotion of the mark will give certification significance to the mark in the marketplace. See In re National Association of Legal Secretaries (International), 221 USPQ 50 (TTAB 1983). That is, when an applicant seeks registration of a certification mark, it is the use by persons other than the owner of the mark, subject to the owner's control, which is the primary consideration in determining how members of the relevant public will perceive the mark.

In this case, applicant offered many materials as evidence of its use of CRNA as a certification mark. They include copies of publications titled "Certification Examination for Nurse Anesthetists 1999 Candidate Handbook;" "Competency Assessment Models: Certified Registered Nurse Anesthetist;" "Scope and Standards for Nurse Anesthetists;" "Guidelines for Clinical Privileges;" and "Qualifications and Capabilities of the Certified Registered Nurse Anesthetist." In addition, applicant submitted a photograph of a person wearing both a baseball cap with the designation CRNA and an apron with the wording "It's in the bag with a CRNA"; shoelaces with the designation CRNA in a repeating pattern; a

7

badge with the wording "CRNAs ON THE MOVE"; a pin with the wording "CRNA PAC SENATORIAL" superimposed over a representation of the United States Capitol; and a copy of a promotional sheet for the "CRNAs Caring for America Campaign" accompanied by a campaign button with the slogan "CRNAS CARING FOR AMERICA."

Applicant also submitted a sample certificate of the type it awards to certified registered nurse anesthetists. This certificate reads, in pertinent part:

Council on Certification of Nurse Anesthetists
Be it known that
Jane Doe, CRNA
having satisfied the requirements for
Certification
as prescribed by The Council on Certification of Nurse
Anesthetist is now entitled to recognition as a
Certified Registered Nurse Anesthetist

In Witness thereof, I the Chairman of the Council on
Certification of Nurse Anesthetists have caused the official
seal of the Council on Certification of Nurse Anesthetists to
be hereto affixed.

According to applicant, certified registered nurse anesthetists display these certificates at their places of business. In addition, applicant submitted a sample certification card of the type it awards to certified

registered nurse anesthetists.  This card reads, in pertinent part:

Council on Certification of Nurse Anesthetists

Certification No.                Date of Issue
 000000                          April 24, 2001

Eligible to apply for Recertification on:  7/31/2003

Jane M. Doe, CRNA
The CCNA verifies that the above individual has met the
requirements for Certification and may be known as a
Certified Registered Nurse Anesthetist.

Along with these items, applicant submitted a copy of a brochure that includes questions and answers about anesthesia and a health questionnaire for patients undergoing anesthesia. According to applicant, certified registered nurse anesthetists also display these brochures at their places of business.  The front of this brochure features a picture of a medical professional and reads:

Anesthesia

Certified
Registered
Nurse
Anesthetists
answer your questions

One of the questions in the brochure is "Who administers anesthesia?" and the response states, inter alia, that "CRNAs are advanced practice nurses with specialized graduate-level education in anesthesiology."

In the case of In re National Association of Legal Secretaries, supra, the applicant therein sought to register

9

the designation PROFESSIONAL LEGAL SECRETARY as a

certification mark attesting to "the ability of a certificate

holder to perform as a professional legal secretary." The

only specimen submitted was a business size card which read

"National Association of Legal Secretaries certifies that

[name of qualifying member] is a Professional Legal

Secretary," accompanied by appropriate organizational

signatures. In finding that this specimen was unacceptable,

the Board stated at 221 USPQ 51:

> Although applicant contends that the foregoing
> language "advertises to the prospective employer the
> quality of the secretary's services," we conclude
> that it comes much closer to attesting that the
> cardholder has been awarded the title of
> "PROFESSIONAL LEGAL SECRETARY" by applicant with
> little else assumable by fair inference; nor does
> the record show, through other evidence or
> documentation, that a message as to service
> capability certification would be thereby
> communicated to prospective employers or other
> service purchasers. While it is true that the
> "PROFESSIONAL LEGAL SECRETARY" designation does not
> appear as a title or degree following the member's
> name on a letterhead [as was the case of "CERTIFIED
> PROFESSIONAL PHOTOGRAPHER" in In re Professional
> Photographers, supra], or on a business card [as
> with "C.P.B.C." in the recent case of In re
> Institute of Certified Professional Business
> Consultants, 216 USPQ 338, Serial No. 206,007 (slip
> opinion, May 13, 1983)], the bare declaration that
> the holder is a PROFESSIONAL LEGAL SECRETARY" fails,
> in our view, to convey the impression that
> PROFESSIONAL LEGAL SECRETARY is a certification
> mark.

In the case of In re National Institute for Automotive

Service Excellence, 218 USPQ 744 (TTAB 1983), the applicant

therein sought to register a design mark as a certification

10

mark for automotive repair services. The specimens submitted with the application consisted of cloth insignia with the design mark appearing thereon and the cloth insignia was said to be worn by individuals certified by applicant. In finding these specimens acceptable evidence of certification mark use, the Board distinguished this case from those involving word designations or a combination of letters used immediately after the name of an individual in the manner of a title or degree:

> In the instant case, applicant's mark sought to be registered is obviously not a word designation, or a combination of letters, shown by the specimens of record to be used immediately after the name of an individual in the manner of a title or degree. To the contrary, the mark is a design mark which is not used in conjunction with the name of an individual at all.
> Further, the record shows that in order to qualify to use the mark, a mechanic must meet certain standards set by applicant as to experience and training and must pass a test conducted by applicant for each area of automotive mechanics (e.g., engine repair, brakes, electrical systems, etc.) in which he desires to be certified as competent. In order to maintain his certification, he must retake and pass the test or tests every five years thereafter. According to applicant's literature, applicant's certification program, which is voluntary, tests "at a high level of competency, based on difficult, meaningful tests of mechanics' skill and knowledge." In our opinion, applicant's design mark, when used by an automotive mechanic certified by applicant, serves to certify a characteristic of the automotive repair services performed by him, namely, that the services are being performed by a person who meets certain standards and tests of competency set by applicant, an indication that the services may be of better quality than automotive repair services performed by a person who has not been certified by applicant.

Further, the Board's decision in American Speech-Language-Hearing Association v. National Hearing Aid Society, 224 USPQ 798 (TTAB 1984) is instructive. In that case, the petitioner sought to cancel the registration of the collective membership mark NATIONAL HEARING AID SOCIETY CERTIFIED HEARING AID AUDIOLOGIST on the ground that, inter alia, the registration was invalid because the mark was not being used as a collective membership mark. In holding that the mark was not being used as a collective membership mark, the Board commented that the manner in which the mark was used might qualify it to be a certification mark:

> The specimens comprise a certificate with the mark appearing on the lower right hand portion of the certificate. Respondent's name appears across the top of the certificate and below respondent's name is the following verbiage:
>
> "NATIONAL BOARD for CERTIFICATION
> To all those who witness these presents, be it known that: [Name of Individual]
> having complied with the requirements of the National Board for Certification of the National Hearing Aid Society, an organization fostering, stimulating, and maintaining high standards of technical competence and ethical practices on the part of those engaged in the fitting and servicing of hearing aids, is hereby declared to be a "CERTIIFIED HEARING AID AUDIOLOGIST"
>
> An identical specimen certificate was filed in connection with respondent's Section 8 affidavit. Article VIII of the respondent's By Laws provides for the establishment of the Board of Governors and states that the duties of the Board shall be to evaluate and pass on the qualifications of all applicants for certification; and that all certified members shall be furnished with an appropriate certificate evidencing such certification. As for

12

Ser No. 75722091

> the requirements for certification, a pamphlet entitled Certification by the National Hearing Aid Society made of record indicates that certification is granted only to those who have met strict standards of education, experience, competence and character. Under the heading "CERTIFICATION," the text reads: "The title, Certified Hearing Aid Audiologist, is granted only to those hearing aid dealers who have met exacting requirements established by the National Hearing Aid Society." Requirements include completion of the respondent's course in hearing aid audiology or an equivalent approved course; passage of respondent's comprehensive examination or an equivalent approved examination; proof of two years experience in the fitting of hearing aids; submission of three references to the applicant's competence in the hearing aid field; submission of character and financial references; agreeing to abide by respondent's Code of Ethics; and submission of all advertising for 30 days prior to application, as proof of ethical advertising procedures.
> In our opinion, the specimens and exhibits referred to above indicate that the mark may well be serving as a certification mark as defined in Section 45 of the Act.

Id. 224 USPQ 807.

In the case of In re National Association of Purchasing Management, 228 USPQ 768 (TTAB 1986), the applicant therein sought to register the acronym C.P.M. as a certification mark for "management of purchasing and materials." As evidence of certification mark use, the applicant submitted the business cards of two purchasing managers on which C.P.M. appeared, a four-page brochure titled "Professional Certification for Purchasing Managers – Application for Certification," an information booklet for applicants taking the qualifying

13

examination for certified purchasing managers, and other

informational materials.  The Board stated at 228 USPQ 769:

> Whether subject matter functions as a title or
> degree or as a certification mark for services must
> be determined from the context in which it is used,
> as revealed by the specimens of record, and how it
> is perceived by prospective recipients of the
> services, the characteristics of which are
> certified.  (case citation omitted)  Since it is the
> use by persons other than the owner (appellant),
> subject to the owner's control, which is the primary
> consideration in determining prospective recipients'
> perceptions, the issue whether the subject matter
> functions as a certification mark turns largely on
> the nature of its use on materials advertising the
> services which are directed to recipients by the
> authorized users.

Insofar as the business cards were concerned, the Board

held that the use of C.P.M. thereon "function[ed] solely as a

title or degree and not as a certification mark."  Id. p. 770.

As to the brochure, information booklet and other

informational materials, the Board stated at 228 USPQ 769, n.

7, "[such] evidence herein concerns applicant's promotion of

the certification program to prospective users of the acronym.

This evidence has little bearing on how the ultimate

recipients perceive it." (citation omitted).

Finally, in the recent case of In re Software Publishers

Association, 69 USPQ2d 2009 (TTAB 2003), the applicant therein

sought to register the term CERTIFIED SOFTWARE MANAGER as a

certification mark for "software asset and licensing

management."  Applicant submitted as a specimen a copy of a

certificate issued to a person who completed applicant's

course.  The certificate read "This certificate is awarded to Pamela Pankiewicz for successfully completing the requirements to become a Certified Software Manager."  The Board stated, at 69 USPQ2d 2014-2015, that "the only information indicating use of the designation CERTIFIED SOFTWARE MANAGER is the certificate reproduced earlier herein" and "[t]he language on applicant's specimen and the context thereof merely indicates that the holder has been awarded the title or degree of "Certified Software Manager," and is not likely to be perceived by the relevant purchasers as a certification mark."

Unlike the applicant in In re Software Publishers Association, supra, the applicant herein has submitted many specimens and other materials.  Turning then to the various specimens, the problem with the baseball cap, apron, badge, pin, shoelaces, and material used in the CRNAS FOR AMERICA campaign is that these items are evidence merely of applicant's promotion or use of the term CRNA, but without any indication of what the term is identifying (other than the actual goods on which CRNA is used).  Further, even if we were to view these items and materials as a promotion of applicant's certification program, they promote the term CRNA to prospective authorized users of the designation CRNA, i.e., nurse anesthetists.  These items/materials are similar in nature to the information booklet and materials submitted by the applicant in In re National Association Purchasing

15

Management, supra.  Such evidence is not persuasive of how the designation CRNA is perceived by the ultimate recipients of the services, i.e., surgical patients.

However, applicant has submitted a sample of the certificate which it issues to certified registered nurse anesthetists.  The certificate indicates that the holder thereof, a CRNA, has satisfied the requirements for certification by applicant and is entitled to recognition as a Certified Registered Nurse Anesthetist.  Also, applicant has submitted a copy of a brochure which includes a statement that CRNAs are "advanced practice nurses with specialized graduate-level education in anesthesiology."  Further, according to applicant, these certificates and brochures are displayed by certified registered nurse anesthetists at their places of business.  In addition, the record shows that in order to qualify to use the CRNA designation, a nurse anesthetist must meet certain eligibility requirements set by applicant and pass a certification examination conducted by applicant.  The examination covers the areas of "Basic Sciences", "Equipment, instrumentation, and technology", "Basic principles of anesthesia", "Advanced principles of anesthesia," and "Professional issues."  In order to maintain his/her certification, a certified registered nurse anesthetist must earn 40 continuing education credits within two years of

initial certification.  Further, applicant's "Candidate Handbook" states at page 3, that:

> Credentialing provides assurances to the public that certified individuals have met objective, predetermined qualifications for providing nurse anesthesia services.  While state licensure provides the legal credential for the practice of professional nursing, private voluntary certification indicates compliance with the professional standards for practice in this clinical nursing specialty.  The certification credential for nurse anesthetists has been institutionalized in many position descriptions as a practice requirement or as the standard for demonstrating equivalency. It has been recognized through malpractice litigation, selected State Nurse Practice Acts, and state rules and regulations.

Also, we note that applicant states in a paper titled "Qualifications and Capabilities of the Certified Registered Nurse Anesthetist" that "[a]s one of the first nursing specialty groups, CRNAs have a longstanding commitment to high standards in a demanding field.  As independently licensed health professionals, CRNAs are responsible and accountable for their practice."

The sample certificate, brochure and above literature are similar in nature to the items and material submitted by the applicant in In re National Institute for Automotive Service Excellence, supra.  That is, in this case, applicant's literature shows that in order to qualify to use the CRNA designation, a nurse anesthetist must meet certain standards and take and pass a test.  In addition, in order to maintain

17

certification, the nurse anesthetist must retake and pass a test.

Further, as evidenced by the certificate, the CRNA designation is used in conjunction with the wording "having satisfied the requirements," and the CRNA designation is displayed in a manner that it would be viewed by the ultimate recipients of the services.

We find that the sample certificate, brochure and above literature indicate that the CRNA designation serves as a certification mark. The CRNA designation, when used by a nurse anesthetist certified by applicant, serves to certify a characteristic of anesthesia services performed by him/her, namely that the services are being performed by a person who meets certain standards and tests of competency set by applicant, an indication that the nurse anesthesia services being performed are of the highest quality. Applicant has stated that the certificate and brochure, in particular, are displayed by certified registered nurse anesthetists at their places of business. The certificate and brochure, along with applicant's literature concerning its standards and competency tests, serve to demonstrate that the CRNA designation would be perceived as a certification mark by the ultimate recipients of the services, namely surgical patients, and doctors and hospital administrators.

18

Accordingly, we reverse the refusal on the ground that the CRNA designation fails to function as a certification mark.

### Refusal Based on Genericness of CRNA or, in the alternative, Mere Descriptiveness and Failure to Acquire Distinctiveness

Having found that the designation CRNA functions as a certification mark, we turn then to the remaining issues in this case, that is, whether CRNA is generic of the identified services, and if not, whether the showing of acquired distinctiveness furnished by applicant is sufficient to establish that the designation has become distinctive of the services.[2]

### Summary of Arguments

It is the examining attorney's position that the term CRNA is "merely a generic designation for a certified registered nurse anesthetist." (Final office action, 6/21/03). According to the examining attorney, the record evidences that applicant and third parties use the designation CRNA in a generic manner in connection with the identified services. With respect to applicant's claim of acquired distinctiveness, the examining attorney argues that, even assuming that the designation CRNA is not generic, applicant's evidence fails to demonstrate that the

---

[2] We note that mere descriptiveness is not an issue since applicant seeks registration under the provisions of Section 2(f).

19

designation CRNA has become distinctive of the identified services.

Applicant, on the other hand, contends that the examining attorney has not established by clear evidence that the designation CRNA is a generic term for the identified services. Applicant argues that the uses of CRNA in the materials made of record by the examining attorney are references to individuals who are authorized by applicant to use the CRNA designation. Further, applicant argues that it has presented substantial evidence to demonstrate that the designation CRNA has become distinctive of the identified services.

Discussion and decision

"A generic term is the common descriptive name of a class of goods or services . . ." H. Marvin Ginn Corp. v. International Association of Fire Chiefs, Inc., 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986). The critical issue in genericness cases such as this one is whether members of the relevant public primarily use or understand the term sought to be registered to refer to the genus of goods or services in question. Our primary reviewing court has set forth a two-step inquiry to determine whether a mark is generic: First, what is the genus (category or class) of goods or services at issue? Second, is the term sought to be registered understood by the relevant public primarily to refer to that genus

(category or class) of goods or services? 228 USPQ at 530.

The burden of proving genericness falls on the trademark

examining attorney, who must present "clear evidence of

generic use." See In re Merrill Lynch, Pierce, Fenner, and

Smith, Inc., 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir.

1987).

With respect to the first part of the inquiry, the

services which applicant certifies are identified as the

rendering and administering by certified registered nurse

anesthetists of anesthesia and anesthesia-related care. Thus,

in this case, the genus or class of services is essentially

anesthesia services rendered and administered by certified

registered nurse anesthetists. Next, the relevant public for

these services consists primarily of the ultimate recipients

of the services, i.e., surgical patients, and doctors and

hospital administrators.

This brings us to the question whether the relevant

public, that is, surgical patients, doctors and hospital

administrators, would understand the designation CRNA

primarily to refer to anesthesia services rendered and

administered by certified registered nurse anesthetists.

Neither the examining attorney nor applicant specifically

addressed the question whether the term "certified registered

nurse anesthetist," itself, is generic for the identified

services. Applicant uses the term "certified registered nurse

21

anesthetist" in a generic manner in its identification of services. In addition, the term is used in a generic manner in the brochure given to prospective surgical patients, e.g., a statement in the brochure reads "In the majority of cases, anesthesia is administered by a certified registered nurse anesthetist (CRNA)." In this case, the term "certified registered nurse anesthetist" is generic in that it directly names the services, i.e., "certified registered nurse anesthetist services." See In re Northland Aluminum Products, Inc., 777 F.2d 1556, 227 USPQ 961 (Fed. Cir. 1995)[BUNDT for coffee cake held generic]; In re Central Sprinkler Co., 49 USPQ2d 1194 (TTAB 1998) [ATTIC for automatic sprinklers for fire protection held generic]; and In re Reckitt & Colman, North America Inc., 18 USPQ2d 1389 (TTAB 1991) [PERMA PRESS for soil and stain removers held generic]. It would be reasonable for a surgical patient, doctor or hospital administrator to refer to such anesthesia and anesthesia-related care as certified registered nurse anesthetist care.

In view of the foregoing, we find that the term "certified registered nurse anesthetist" is generic. This does not end our inquiry, however, because it is not automatically the case that the initial letters of a generic term are recognized as being substantially synonymous with such term. Rather, as the Board discussed in Capital Project Management Inc. v. IMDISI Inc., 70 USPQ2d 1172, 1179 involving

the designation TIA for scheduling analysis services for

construction projects involving time impact analysis:

> Whether the initials for this generic term ["time
> impact analysis"] should also be deemed generic
> presents a separate, yet related issue.  In
> determining this issue, we must examine whether the
> letters "TIA" are generally recognized and used in
> the construction field as an accepted abbreviation
> for "time impact analysis."
> An abbreviation or initialism of a generic name
> which still conveys to the relevant public the
> original generic connotation of the abbreviated name
> is still generic.  Acronyms and initialisms are
> often used interchangeably with the full generic
> name and recognized as equivalent.

Nonetheless, as the Court of Customs and Patent Appeals,

the predecessor of our principal reviewing court, cautioned

when discussing the question of whether letters that

correspond to the initial letters of a descriptive combination

of words are similarly descriptive in Modern Optics, Inc. v.

Univis Lens Co., 234 F.2d 504, 110 USPQ 293, 295 (CCPA 1956):

> The letters "CV" are, of course, the initial letters
> of the words "continuous vision," and it is possible
> for initial letters to become so associated with
> descriptive words as to become descriptive
> themselves.  (citations omitted)  It does not
> follow, however, that all initials or combinations
> of descriptive words are ipso facto unregistrable.
> While each case must be determined on the basis of
> the particular facts involved, it would seem that,
> as a general rule, initials cannot be considered
> descriptive unless they have become so generally
> understood as representing descriptive words as to
> be accepted as substantially synonymous therewith.

We therefore must review the uses of CRNA in the record.

The examining attorney submitted the results of a search of

the "STANDS4.com" website (which identifies itself as "[t]he

23

source for acronyms and abbreviations") that indicates CRNA "stands for" "Certified Registered Nurse Anesthetist;" and excerpts from three online dictionaries, namely Stedman's Medical Dictionary and The American Heritage Dictionary of the English Language, which show that CRNA is an abbreviation for "certified registered nurse anesthetist", and Dorland's Medical Dictionary, which shows that CRNA is an abbreviation for "Certified Registered Nurse Anesthetist."

The examining attorney also submitted examples from the Internet regarding uses of the designation CRNA. These uses of CRNA are from employment agency and medical provider websites, examples of which are shown below:

GasWork.com – contains job postings for anesthesiologists and CRNAs.

GasJobs.com – listings of anesthesiologists and CRNAs.

Gooding Institute of Nurse Anesthesia – Panama City, FL – RN and CRNA options from Bay Medical Center.

JLR Medical Group – anesthesiologist and CRNAs providing anesthesia, pain medicine, and critical care medicine services.

Florida Association of Nurse Anesthetists (FANA) – represents and promotes CRNAs, nursing, medical professionals, hospitals, and healthcare facilities interested in the practice of anesthesia.

Sycamore Anesthesia Services, Ltd. is one of the largest CRNA and anesthesiologist staffing agencies in the Midwest. Although based in Illinois, we specialize in both temporary and permanent placements nationwide.
(http://www.sas-ltd.com)

Our experienced professionals specialize in placing physicians and CRNA's nationwide. (http://www.locumtenens.com)

Need an Anesthesiologist or CRNA to fill your opportunity. (http://www.gasjobs.com)

Company Name:  J. Allen Health
Location:  Not specified, VA USA
Summary:  ID GC285 AN group employee position. 3 AN  6 CRNA's.  Call 1:6 Small Community in Southern VA
(http://mdjobsite.com)

Hattiesburg Clinic
Certified Registered Nurse Anesthetists
Corrine Barbieri, C.R.N.A.
Janet P. Bills, C.R.N.A.
Rodney Brown, C.R.N.A
(no web address provided)

ANESTHESIA
Lauren Velk, CRNA
David Widdekind, CRNA
Michael Barts, CRNA
(http://www.mmhcare.org)

As additional evidence that CRNA is generic, the examining attorney points to several of applicant's own uses of the designation.  For example, in applicant's paper titled "Competency Assessment Models:  Certified Registered Nurse Anesthetists" (Exhibit A to Applicant's Response Filed August 6, 2001), the introduction reads:

A profession has a responsibility to assure the public that its members seek to maintain and improve their knowledge and skills.  With emphasis on the goal of providing optimal care for patients, the American Association of Nurse Anesthetists (AANA) is committed to promoting the accountability and competence of Certified Registered Nurse Anesthetists (CRNAs).  Setting, disseminating, and applying standards of high-quality anesthesia

education and practice assists CRNAs in providing the best possible care to patients.

In applicant's document titled "Qualifications and Capabilities of the Certified Registered Nurse Anesthetist" (Exhibit D to Applicant's Response Filed August 6, 2001), the introduction reads:

This document has been prepared by the American Association of Nurse Anesthetists (AANA) to provide information about the qualifications and capabilities of Certified Registered Nurse Anesthetists (CRNAs).

Further, the examining attorney points to a final rule proposal of the Health Care Financing Administration published in the Federal Register (Vol. 66, No. 12, January 18, 2001). According to the examining attorney, CRNA is used in a generic manner in the following excerpted material:

There have been no studies published within the last 10 years demonstrating any need for Federal intervention in State professional practice laws governing CRNA practice. Currently, there is no reason to require a Federal rule in these conditions of participation mandating that physicians supervise the practice of another State-licensed health professional where there is a statutory provision authorizing direct Medicare payment for the services of that health professional.

….

Congress has specified which non-physician health professionals may receive separate payment for their professional services (such as CRNAs and nurse practitioners). In addition, Congress left the function of licensing these health professionals to the States. Medicare recognizes the scope of practice established by the States for these health professionals. Prior to this final rule, Medicare's hospital CoPs did not have Federal requirements for

26

physicians to supervise the practice of another State-licensed health professional where there is a statutory provision authorizing direct Medicare payment for the services of that health professional, with the sole exception of the Federal requirement for physician supervision of CRNAs. We do not believe that there is evidence to support maintaining a special Federal requirement for physician supervision of CRNAs.

Applicant, in support of its position that the designation CRNA is not generic and that the designation has become distinctive, submitted literature which provides a brief history of the organization. According to the literature, the practice of anesthesia is a recognized specialty within the profession of nursing. The AANA was formed in 1931, and is the sole professional organization representing certified registered nurse anesthetists in the United States. The AANA developed and implemented the certification program leading to the designation of Certified Registered Nurse Anesthetist in 1945 and also established a mechanism for accreditation of nurse anesthesia education programs in 1952. In 1975, the certification program was taken over by applicant which has been, since then, the sole body recognized to certify registered nurse anesthetists in the United States. Applicant is recognized by the U.S. Department of Education as a recognized accrediting association; by the Veterans Health Administration as one of its accredited business associates; and by Access Group, a private loan agency which provides loans only for schooling

27

that has been accredited by certain institutions, including nurse anesthesia programs accredited by applicant.  Among the nation's medical research hospitals that recognize graduation and certification of nurses by applicant are the Mayo Clinic College of Medicine; the Columbia University School of Nursing; the University of Texas Health Sciences Center; and the Tufts-New England Medical Center.

In addition, applicant submitted the declaration of its Director of Certification, Susan S. Caulk.  Ms. Caulk states that the designation CRNA has been used continuously by applicant since as early as May 1957 in connection with the certification of nurse anesthetists for the services specified in the application; that applicant is the only certifying body in the United States for the nursing specialty of nurse anesthesia services rendered by certified registered nurse anesthetists; that applicant has continuously administered exams under the CRNA mark annually from 1957 and to date approximately 40,000 persons have been certified; that applicant uses the mark on stationery, brochures, announcements for exams, actual exams and certificates issued to qualifying persons; and that the mark is a primary and critically important means by which the medical and nursing profession identifies and distinguishes those capable of licensure and practice of nurse anesthesia services in a clinical setting.

Also, applicant submitted the declaration of Wade Delk, executive director of the National Organization for Competency Assurance (NOCA). This organization develops criteria and standards for health certifying agencies. According to Mr. Delk, applicant is a member of and fully accredited by NOCA as a health certifying agency. Mr. Delk states that NOCA does not have any other nurse anesthetist agencies as members and that it has not accredited any other nurse anesthetist program.

Applicant also submitted copies of ten state codes or statutes that regulate professions and occupations within the states. A review of these codes and statutes shows that applicant is the only organization recognized by these states to issue certification in the field of nurse anesthesia.

Upon careful consideration of the record herein, we find that it has not been shown by clear evidence that the designation CRNA has become so generally understood as an initialism for "certified registered nurse anesthetist" as to be substantially synonymous therewith. The definitions show that CRNA stands for or is an abbreviation of "certified registered nurse anesthetist." However, two of the definitions show "certified registered nurse anesthetist" used in a proprietary manner (as a mark) in that it is depicted with each word in initial capital letters. Thus, in these two definitions, CRNA may well be understood as a mark rather than

a generic term.  Further, while CRNA is used at the employment agency websites in a generic manner in that it is used as a job title, e.g., "job postings for anesthesiologists and CRNAs"; and " . . . specialize in placing physicians and CRNA's nationwide," this evidence does not demonstrate that CRNA is used interchangeably with certified registered nurse anesthetist or that it is an alternative form of the term.  In other words, we are unable to determine from the website evidence whether CRNA would be perceived as an abbreviation for a certified registered nurse anesthetist generally or as a registered nurse anesthetist certified by applicant.

Also, there is no evidence in this case of third-party use of CRNA.  Indeed, the record indicates that applicant is the sole body recognized to certify registered nurse anesthetists in the United States, and that applicant's certification program is recognized by research hospitals and state agencies which govern nursing practice.  In view thereof, and because applicant also uses "certified registered nurse anesthetist" in its own materials as a mark, in that it is depicted with each word being capitalized, we are not persuaded that CRNA, as used in these materials, would be regarded as a generic term to refer to a certified registered nurse anesthetist generally, rather than a mark to refer to a registered nurse anesthetist certified by applicant.

30

In sum, given the fact that in two of the definitions relied upon by the examining attorney, CRNA may well be understood as a mark; the fact that the evidence relied upon by the examining attorney does not demonstrate interchangeable use of CRNA and "certified registered nurse anesthetist"; and the fact that there is no third-party use of CRNA, but rather, the evidence points to the uniqueness of applicant and its certification program in the field, we find that the examining attorney has not established by clear evidence that CRNA has come to be understood as substantially synonymous with "certified registered nurse anesthetist." In other words, we are not convinced, on this record, that surgical patients, doctors, and hospital administrators would understand that CRNA stands for or is an alternative term for a certified registered nurse anesthetist generally, rather than as referring to a  registered nurse anesthetist certified by applicant. We readily admit that we have doubt as to the character of CRNA, but we believe such doubt should be resolved in applicant's favor. In re Waverly Inc., 27 USPQ2d 1620 (TTAB 1993).

We turn next to the issue of the sufficiency of applicant's claim of acquired distinctiveness. Applicant has the burden of proof to establish a prima facie case of acquired distinctiveness. Yamaha International Corp. v.

Hoshino Gakki Co., Ltd. 840 F.2d 1572, 6 USPQ2d 1001 (Fed. Cir. 1988).

In this case, applicant has claimed continuous use of the designation CRNA as a certification mark for close to fifty years. The record shows that applicant has used the designation CRNA in brochures and promotional campaigns directed to nurse anesthetists. Also, applicant is the national certifying organization in the nurse anesthesia field and there is no evidence of use of the designation CRNA or similar designation by other certifying organizations. Further, applicant states that it has certified approximately 40,000 nurse anesthetists. The record would suggest that applicant has enjoyed a good degree of success in promoting its certification program in the nurse anesthesia field as evidenced by the number of nurse anesthetists it has certified. Nonetheless, this evidence does not demonstrate that the relevant public has come to view the designation CRNA as applicant's source-identifying certification mark. In particular, with respect to applicant's use of the designation CRNA in promotional brochures and on pins, shoelaces, etc. directed to nurse anesthetists, this evidence is not particularly probative of how surgical patients, doctors, and hospital administrators have come to view CRNA. Moreover, noticeably absent from this record is direct evidence regarding how surgical patients, doctors and hospital

32

administrators have come to view the designation CRNA.   More evidence than that which has been offered here would be necessary to establish acquired distinctiveness of the designation.  We find this to be especially the case where, as here, the designation is highly descriptive.  That is to say, the greater the degree of descriptiveness, the greater the evidentiary burden on the user to establish acquired distinctiveness.  Yamaha International Corp. v. Hoshino Gakki Co., supra; and In re Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.

**Decision**:  The refusals to register on the grounds that CRNA does not function as a certification mark and is generic are reversed; the refusal to register on the ground that CRNA is merely descriptive and applicant's showing of acquired distinctiveness is insufficient is affirmed.