The H. MARVIN GINN
CORPORATION,
Appellant,

v.

The INTERNATIONAL ASSOCIATION
OF FIRE CHIEFS, INC., Appellee.

Appeal No. 85–2513.

United States Court of Appeals,
Federal Circuit.

Jan. 23, 1986.

Charles A. Laff, Laff, Whitesel, Conte & Saret, Chicago, Ill., argued for appellant. With him on brief were Larry L. Saret and Lawrence R. Robins.

Martin W. Bercovici, Keller & Heckman, Washington, D.C., argued for appellee. With him on brief was Susan J. Blum.

Before RICH, KASHIWA * and SMITH, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the April 12, 1985, decision of the U.S. Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board) in cancellation No. 13,676, 225 USPQ 940 (1985), granting the International Association of Fire Chiefs' (IAFC) petition to cancel the H. Marvin Ginn Corporation's (Ginn) Principal Register registration of the mark FIRE CHIEF (Registration No. 1,079,863, issued December 20, 1977), for a "magazine directed to the field of firefighting." We reverse and remand.

*Background*

Appellant Ginn has published the monthly magazine FIRE CHIEF since 1967. FIRE CHIEF is Ginn's principal product, and has a monthly circulation of approximately 31,000. The magazine is circulated to fire departments and executives in every state, as well as in Canada and Mexico. Ginn's primary source of revenue from FIRE CHIEF is from its advertisers, and Ginn has expended substantial time and money promoting FIRE CHIEF among potential advertisers and subscribers.

The title of Ginn's magazine has been consistently displayed as follows:

Appellee IAFC is a membership association of senior management personnel in the fire service, originally organized in 1873 as "The National Association of Fire Engineers." The IAFC adopted its present name in 1926, and, since 1939, has published a monthly newsletter for its members. Until 1970, the newsletter was entitled "News Letter." In 1970, the IAFC changed the name of its publication to "The International Fire Chief," and in 1977 changed the format of its publication to that of a magazine and began soliciting advertisements. As a result of these changes, Ginn protested, and an exchange of correspondence between the parties resulted in the IAFC changing the name and logo of its publication to "The Official Publication of the International Association of Fire Chiefs." In January, 1979, however, the IAFC changed its title to "The International Fire Chief," and the title format has remained essentially as follows since then:

# The International Fire Chief

The board opinion contains illustrations showing this evolution. 225 USPQ at 943–44.

Within five years of the issuance of Ginn's registration, apparently on December 17, 1982, the IAFC filed the petition to cancel now before us, alleging that the term "Fire Chief" is a "common descriptive name which has not acquired secondary meaning" and which, "[w]hen applied to the specified class of the subject registration ... conveys the immediate idea that the magazine is for Fire Chiefs without providing any indication of origin of publication." The IAFC's petition also alleged that "Fire Chief" is subject to cancellation as a generic term under section 14(c) of the Lanham Act (15 U.S.C. § 1064(c)). Ginn denied the essential allegations of the petition to cancel in its answer. Both parties

---

* Judge Kashiwa retired on 7 January 1986. Before his retirement he participated in the consideration and decision of this case and joined in this opinion.

filed briefs and submitted testimony and documentary exhibits before the board.

### The Board's Decision

The board granted the IAFC's petition to cancel, concluding that the term "Fire Chief" is generic for Ginn's goods. In doing so, the board found that "Fire Chief" designates a very particular and definable target audience to which Ginn's and other's publications were directed. The board reasoned that "the fact that a 'fire chief,' by definition, is a person in the fire service rather than a magazine ... is not conclusive of that term's non-genericness." Moreover, said the board, "that a term does not designate a particular class of magazine, is not crucial to a genericness holding, if the term designates a definable target audience to which the publication is directed." 225 USPQ at 946. The board then found, inter alia, that Ginn's "magazine FIRE CHIEF is and has always been edited, circulated, and promoted with a view primarily to fulfill the needs and professional interests of fire chiefs." Based on these findings and the statements of law noted above, the board concluded that "the term 'Fire Chief' would be perceived by the relevant public as a generic or common descriptive term for a magazine of the type in respect of which the registration sought to be cancelled is used." 225 USPQ at 947.

### OPINION

Section 2(e)(1) of the Lanham Act (15 U.S.C. § 1052(e)(1)) precludes registration of a designation if it consists of a mark that, "when applied to the goods of the applicant, is merely descriptive of them." However, a descriptive term that has become distinctive of an applicant's goods may be registered under § 2(f) of the Lanham Act.

A generic term is the common descriptive name of a class of goods or services, and, while it remains such common descriptive name, it can never be registered as a trademark because such a term is "merely descriptive" within the meaning of § 2(e)(1)

and is incapable of acquiring de jure distinctiveness under § 2(f). The generic name of a thing is in fact the ultimate in descriptiveness. *See In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559, 227 USPQ 961, 963 (Fed.Cir.1985); *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845, 847, 129 USPQ 411, 413 (CCPA 1961); J. Thomas McCarthy, TRADEMARKS AND UNFAIR COMPETITION, § 12:18.A (2d Ed.1984).

■ The classic issue with respect to genericness in trademark law was enunciated by Judge Learned Hand, in an opinion holding the term ASPIRIN to be generic:

The single question, as I view it, in all these cases, is merely one of fact: what do buyers understand by the word for whose use the parties are contending?

*Bayer Co. v. United Drug Co.*, 272 F. 505, 509 (S.D.N.Y.1921). The test is thus one of meaning to the usual buyer or other relevant members of the public. *See also Northland Aluminum*, supra, 777 F.2d at 1559, 227 USPQ at 963; *Dan Robbins & Associates, Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979).

The genericness inquiry was further explained in the Trademark Clarification Act of 1984, an amendment to § 14(c) of the Lanham Act, which provides for cancellation of trademarks that have become the "common descriptive" or generic name of an article or substance. The amendment provides, in pertinent part:

The primary significance of the registered mark to the relevant public ... shall be the test for determining whether the registered mark has become the common descriptive name of goods or services in connection with which it has been used.

15 U.S.C.A. § 1064(c) (West Supp.1985). *See* Act of November 8, 1984, Pub.L. No. 98–620, 1984 U.S.Code Cong. and Adm. News (98 Stat. 3335) 5718–27.

■ The critical issue in genericness cases is whether members of the relevant public primarily use or understand the

term sought to be protected to refer to the genus of goods or services in question. *See, e.g., Department of Justice, Federal Bureau of Investigation v. Calspan Corp.*, 578 F.2d 295, 299, 198 USPQ 147, 149 (CCPA 1978); *Maremont Corp. v. Air Lift Co.*, 463 F.2d 1114, 1118, 174 USPQ 395, 398 (CCPA 1972); *In re Automatic Radio Mfg. Co.*, 404 F.2d 1391, 1394–95, 160 USPQ 233, 235–36 (CCPA 1969). Determining whether a mark is generic therefore involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?

This court's predecessor long ago noted, before the Lanham Act, that "the matter of registering as technical trade-marks the titles or names adopted by publications such as newspapers and magazines has presented numerous perplexing questions in the past." *In re Wings Publishing Co.*, 148 F.2d 214, 215, 65 USPQ 123, 125 (CCPA 1945). It then concluded:

> It is sufficient to say that it has become the settled practice to grant such registrations in cases where it is deemed proper to do so, measuring the applications for same by the statutory provisions and the rules and regulations conforming thereto as applied to all types of goods and merchandise. *Id.*

The United States Court of Appeals for the Seventh Circuit has noted, however, that magazines differ from other goods "in that their title is a primary means of conveying their content, the result being that many magazine titles fall near the line between generic and descriptive marks." The courts have thus "been reluctant to find a magazine title generic, perhaps in part because the magazines in such cases were not literally the class title designated but were *about* that class." *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1140, 222 USPQ 839, 841 (7th Cir. 1984) (holding "Software News" to be generic for a publication about the software industry), citing *CES Publishing Corp. v.*

*St. Regis Publications, Inc.*, 531 F.2d 11, 14, 188 USPQ 612, 616 (2d Cir.1975).

In *CES Publishing*, the Second Circuit held that "Consumer Electronics Monthly" was generic when used as the title of a consumer electronics trade magazine. That decision was based on the principle that "[w]here the title of a trade magazine names not only the class of goods but a class of magazines devoted to displaying and discussing those goods, that title is generic." 531 F.2d at 14, 188 USPQ at 615. Similarly, in *Reese Publishing Co. v. Hampton International Communications*, 620 F.2d 7, 205 USPQ 585 (2d Cir. 1980), the Second Circuit, relying on *CES*, held that "Video Buyer's Guide" also names "a class of magazines devoted to displaying and discussing" the goods of a particular trade and is therefore generic and not entitled to trademark protection.

In *American Association for the Advancement of Science v. Hearst Corp.*, 498 F.Supp. 244, 206 USPQ 605 (D.D.C.1980), the District Court for the District of Columbia held that the title "Science" for a magazine *about* science is not generic. The court distinguished the *CES* case on the ground that there was a *trade* identified as consumer electronics and that no title in the class of trade magazines dealing with consumer electronics could suffice but one that used the name of the industry itself, i.e., "Consumer Electronics Monthly." 498 F.Supp. at 256, 206 USPQ at 616. The "Science" decision was based on the principle that there was no definite class of science magazines, and that "Science" did not name either the plaintiff's product or a class of magazines.

In *Walker-Davis Publications, Inc. v. Penton/IPC, Inc.*, 509 F.Supp. 430, 211 USPQ 265 (E.D.Pa.1981), the court held that the term "Energy Management" is a name which refers to a particular industry and thus names a class of trade magazines, as well as a trade or field of interest, by giving itself the name of the trade or field which is the exclusive subject of its advertisements and articles. It is therefore, said the court, a generic name not capable of

valid registration. 509 F.Supp. at 438, 211 USPQ at 272. As was the case in *CES* and *Reese,* supra, the title at issue in *Walker-Davis* was the specific term understood by the relevant public as the common name of the industry itself.

The board's decision in this case appears to have been based on its analysis of these cases, which resulted in its stating the "law" to be "[t]hat a term does not designate a particular class of magazines is not crucial to a genericness holding, if the term designates a definable target audience to which the publication is directed." The board's primary authority for such a rule is *Reese,* supra. However, the Second Circuit's determination that "Video Buyer's Guide" was generic was not because the term designated a definable target audience, but rather because the term described both a class of goods and a class of magazines about those goods. Thus, although the board's rule would seem to explain the result in *Reese* and *Walker-Davis,* as well as two other recent board decisions, *Yankee, Inc. v. Geiger,* 216 USPQ 996 (TTAB 1982) (sustaining an opposition to registration of "Farmers' Almanac" because the term is generic) and *Conde Nast Publications, Inc. v. Redwood Publishing Co.,* 217 USPQ 356 (TTAB 1983) (sustaining an opposition to registration of the term "The Magazine for Young Women" for genericness), the board's rule is not an appropriate statement of the law in these cases. Having reviewed the decisions regarding the genericness and registrability of magazine titles, we conclude that in such cases, as in most trademark cases, it is difficult to postulate any general rule. The

approach to the issue presented here, then, must be on a case-by-case basis.

Thus, in examining the question of genericness of a magazine title, the two-step inquiry outlined above is the appropriate test. First, what is the class of publications or magazines at issue? Second, is the title understood by the relevant public to refer primarily to that class of magazines?

■ Here, Ginn's registration is of the title of "a magazine directed to the field of fire fighting." In addition to Ginn's publication, the record shows that there are a number of other publications directed to that field. The class of magazines at issue is, therefore, those directed to the field of fire fighting. However, we can discern no record evidence which suggests that the relevant portion of the public refers to a class of fire fighting publications as "Fire Chief." Furthermore, the term "Fire Chief," is neither the name of the fire-fighting industry nor about the fire-fighting industry. We therefore conclude that the board clearly erred in finding Ginn's mark FIRE CHIEF, for a magazine directed to the field of fire fighting, to be generic. At most, it is descriptive and should be retained on the Principal Register unless the IAFC has proved that it never acquired secondary meaning,[1] subject, of course, to the other statutory requirements for maintaining registrations.

## CONCLUSION

The board's decision[2] that Ginn's registration is invalid because the term "Fire Chief" is generic is *reversed.* Because the

---

**1.** It appears to us that the voluminous record already contains sufficient evidence of secondary meaning to prevent cancellation, though there may be some unresolved questions of admissibility. The board said that "our analysis of the sub-issues [listed in footnote 20] would have to be based on an evaluation of essentially the same evidence as we have considered in determining the genericness ground." Appellee's brief (n. 39) has suggested it would be unfair for us to consider secondary meaning since there was no opportunity to argue the issue before us in the absence of a board ruling thereon. We agree. Appellant's reply brief argues that the

board erred in failing to consider secondary meaning.

**2.** May 21, 1985, the board issued an amendment to the penultimate paragraph of its opinion which does not appear in the reports, so that the paragraph now reads as follows:

In view of the above considerations, and since we are firmly of the opinion that our determination that the registration is invalid under section 14(c) because the term "Fire Chief" is generic for respondent's goods is correct, we do not decide the non-pleaded likelihood of confusion ground.

board did not reach the issue of secondary meaning, as is clear from footnote 20 to its opinion, the case is *remanded* for a determination of that issue.

REVERSED AND REMANDED.