This Opinion is a Precedent
of the TTAB

Mailed: December 4, 2019

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*In re James Haden, M.D., P.A.*

_____

Serial No. 87169404

_____

Lisa R. Hemphill of Foley & Lardner LLP, for James Haden, M.D., P.A.

Andrew Rhim, Trademark Examining Attorney, Law Office 101,
Ronald R. Sussman, Managing Attorney.

_____

Before Wellington, Shaw and Kuczma,
Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

## I.    Background

James Haden, M.D., P.A. ("Applicant") seeks registration on the Supplemental

Register of the mark for "Medical and health care services, namely,

medical treatment of allergies, asthma, immune disorders, and shortness of breath,"

in International Class 44.[1] The description of the mark reads: "The mark consists of a red, horizontal oval with a white and blue border. Inside the oval in stacked formation are the words 'ALLERGY CARE' in stylized capital letters in white with blue outline." The colors red, blue and white are claimed as features of the mark.

The Examining Attorney initially refused registration on the Principal Register under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that the mark is merely descriptive of Applicant's services, because it "immediately and directly conveys some information about the services – namely, the services provide care for allergies."[2] When the refusal was made final, Applicant appealed and requested reconsideration. The Examining Attorney denied the request for reconsideration, and the appeal resumed on the issue of mere descriptiveness. Applicant then filed an amendment to allege use and a request for remand, which included an amendment seeking registration on the Supplemental Register. On remand, the Examining Attorney accepted the amendment to allege use but, upon further consideration pursuant to the procedure outlined in Trademark Manual of Examining Procedure (TMEP) § 1209.02(a)(i), refused registration on the Supplemental Register under Trademark Act Sections 23(c) and 45, 15 U.S.C. §§ 1091(c) and 1127, on the ground that the mark is generic and thus incapable of distinguishing Applicant's services. After the Examining Attorney made final the

[1] Application Serial No. 87169404 was filed on September 13, 2016 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), alleging a bona fide intent to use the mark in commerce.

[2] Office Action of July 11, 2017, TSDR p. 1. Citations to the examination record refer to the Trademark Status & Document Retrieval System (TSDR), by page number, in the downloadable .pdf format.

genericness refusal, the appeal resumed on the issue of genericness. We affirm in part and reverse in part.

## II.  Genericness

The sole issue before us is whether Applicant's mark as a whole is generic. Inasmuch as Applicant has amended the application to seek registration on the Supplemental Register, the mark is at best merely descriptive. *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) ("We also agree with the observation of the board that, when appellant sought registration of SUPER BLEND on the Supplemental Register, it admitted that the term was merely descriptive of its goods[.]"). *See also In re Consol. Foods Corp.*, 200 USPQ 477, 478 n.2 (TTAB 1978) ("Registration of the same mark on the Supplemental Register is not prima facie evidence of distinctiveness; in fact, such a registration is an admission of descriptiveness.").

A mark is eligible for registration on the Supplemental Register only if it is capable of distinguishing an applicant's goods or services from those of others. 15 U.S.C. § 1091(c); *In re Emergency Alert Sols. Grp., LLC*, 122 USPQ2d 1088, 1089 (TTAB 2017). Here, the Examining Attorney contends that Applicant's mark is incapable of distinguishing Applicant's services because it is generic. "A generic term is the common descriptive name of a class of goods or services." *In re Cordua Rests., Inc.*, 823 F.3d 594, 118 USPQ2d 1632, 1634 (Fed. Cir. 2016) (quoting *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 114 USPQ2d 1827, 1830 (Fed. Cir. 2015) (internal punctuation omitted)). The generic name by which a [service] is

known is not a mark which can be registered on the Supplemental Register under section 23 because such a name is incapable of distinguishing applicant's [services] from [services] of the same name . . . by others." *Clairol, Inc. v. Roux Distrib. Co.*, 280 F.2d 863, 126 USPQ 397, 398 (CCPA 1960).

Whether a proposed mark is generic rests on its primary significance to the relevant public. *In re Am. Fertility Soc'y*, 188 F.3d 1341, 51 USPQ2d 1832 (Fed. Cir. 1999); *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551 (Fed. Cir. 1991). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered . . . understood by the relevant public primarily to refer to that genus of goods or services?" *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.,* 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986). A term also can be considered generic if the public understands it to refer to a part of the genus, "even if the public does not understand the term to refer to the broad genus as a whole." *Cordua Rests.*, 118 USPQ2d at 1637-38. The Examining Attorney must establish by clear evidence that a mark is generic. *In re Hotels.com, L.P.*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009); *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987).

A. The Genus

Because the identification of goods or services in an application defines the scope of rights that will be accorded the owner of any resulting registration under Section 7(b) of the Trademark Act, 15 U.S.C. § 1057(b), generally "a proper genericness inquiry focuses on the description of [goods or] services set forth in the [application

or] certificate of registration." *Cordua Rests.*, 118 USPQ2d at 1636 (quoting *Magic Wand*, 19 USPQ2d at 1552). We find Applicant's recitation of services, "medical and health care services, namely, medical treatment of allergies, asthma, immune disorders, and shortness of breath," adequately defines the genus at issue.

B.  The Relevant Public's Understanding of the Mark

We begin with the public's understanding of the wording in the mark, ALLERGY CARE. "Evidence of the public's understanding of [a] term may be obtained from any competent source, such as consumer surveys, dictionaries, newspapers and other publications." *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985). The relevant public for a genericness determination refers to the purchasing or consuming public for the identified goods or services. *Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1351 (TTAB 2013) (citing *Magic Wand*, 19 USPQ2d at 1553). Thus, the relevant public is consumers seeking medical and health care services regarding allergies, asthma, immune disorders, and shortness of breath.

The term "allergy" is defined as "[a] damaging immune response by the body to a substance, especially pollen, fur, a particular food, or dust, to which it has become hypersensitive."[3] The term "care" is defined as "[t]he provision of what is necessary for the health, welfare, maintenance, and protection of someone or something."[4]

---

[3] Oxford English Dictionary, Office Action of July 11, 2017, TSDR p. 2.

[4] *Id.* at 3.

The Examining Attorney introduced approximately forty excerpts from Internet web pages in which third-party medical professionals also use the term ALLERGY CARE to refer to their medical and health care services. The following examples are representative:[5]

1. "For thorough **allergy care** services, contact the team at Westside Allergy for assistance" from the Westside Allergy Care webpage.[6]

2. "Banner Health Clinic, specializing in **allergy care**, has nationally recognized allergy physicians who have been caring for allergic adults and children in Colorado since 1988" from the Banner Health webpage.[7]

3. "Our goal is to deliver compassionate cutting-edge **allergy care** for the whole family" from www.familyallergycare.com.[8]

4. "Choose UCHealth for **allergy care** and you've got on your side a team of allergists, immunologists, and ear/nose/throat (ENT) specialists with deep expertise in allergy diagnosis and treatment" from www.uchealth.org.[9]

---

[5] Some of the Examining Attorney's Internet excerpts do not include the URL or the date the pages were accessed as required under *Safer Inc. v. OMS Invs. Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010). However, Applicant did not object to these excerpts so we have considered them for whatever probative value they may have. *In re Mueller Sports Med., Inc.*, 126 USPQ2d 1584, 1586 (TTAB 2018) (by failing to object to Internet excerpts submitted by the examining attorney that did not include URLs and access dates, applicant waived its objections to the submission of those websites).

[6] Office Action dated April 30, 2018, TSDR p. 4.

[7] *Id.* at 12.

[8] Office Action dated July 11, 2017, TSDR p. 5.

[9] Office Action dated November 20, 2018, TSDR pp. 8-9.

5. "Select from a list of doctors who know the latest **allergy care** treatments" from www.livehealthonline.com.[10]

6. "**Allergy care** is our specialty!" from www.centralmassallergy.com.[11]

7. "**Allergy Care** Turf Battle Hits the Courts. Who should treat allergies? The turf battle between primary care physicians and allergists has escalated into a lawsuit charging anti-competitive practices" from www.medpagetoday.com.[12]

8. "That's why John A. Wade, MD, and the asthma and **allergy care** team make it a priority to see patients as soon as possible – to help patients and their families return to normal life in a timely manner" from www.pvalley.org.[13]

9. "Although symptoms can be similar, colds and allergies require different treatment, and Rekha Raveendran, MD, explains how to tell the difference and why you should choose Ohio State for your **allergy care**" from www.wexnermedical.osu.edu.[14]

10. "Our pediatric specialists in **allergy care** combine state-of-the-art evaluation, diagnosis and treatment with the most advanced allergy and immunology pediatric care available" from www.tulanelakeside.com.[15]

---

[10] *Id.* at 12-13.

[11] *Id.* at 14-15.

[12] *Id.* at 18.

[13] *Id.* at 19-20.

[14] *Id.* at 21-24.

[15] *Id.* at 25-27.

The foregoing evidence shows that ALLERGY CARE is a phrase commonly used by medical professionals in their advertising to refer to their practices that care for patients with allergies. Use by others in the field is strong evidence of genericness. *See, e.g.*, *Royal Crown Co., Inc. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2d 1041, 1048 (Fed. Cir. 2018); *BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1570, 35 USPQ2d 1554, 1558 (Fed. Cir. 1995). We find that prospective consumers would therefore understand the phrase ALLERGY CARE to refer to the provision of health care services related to the diagnosis and treatment of allergies. Simply put, prospective consumers seeking treatment for allergies will look for doctors and other medical professionals who provide "allergy care." We have no doubt that relevant consumers would readily understand the term ALLERGY CARE to refer to the genus of services defined by Applicant's recitation of services. Based on the Examining Attorney's evidence we find that the phrase ALLERGY CARE is generic for the identified services.

Applicant nevertheless argues that ALLERGY CARE as a whole is not generic because "the term CARE can have different meanings and interpretations and does not solely relate to medical/health care for treating allergies."[16] This argument is unpersuasive. The fact that the term CARE has other meanings in other contexts does not rebut the above-discussed evidence establishing that the entire phrase, ALLERGY CARE, is used by consumers to refer to the provision of health care

---

[16] Applicant's Br., p. 5, 17 TTABVUE 8. References to the briefs on appeal refer to the Board's TTABVUE docket system. Coming before the designation TTABVUE is the docket entry number; and coming after this designation are the page references, if applicable.

services related to the diagnosis and treatment of allergies. In other words, analysis of the individual terms is not necessary or relevant in light of the evidence establishing that the entire phrase is understood to refer to the genus.

Applicant also argues that ALLERGY CARE is not generic because Applicant does not provide all of the services encompassed by the term:

> "[A]llergy care" can encompass a variety of treatments for various allergies. . . . The services provided under Applicant's mark for medical and health care services, namely, medical treatment of allergies, asthma, immune disorders, and shortness of breath are only some of the treatments that may be provided, but does not describe the whole of the genus of services.[17]

This argument is unpersuasive as well. Applicant cites to no authority for its apparent position that ALLERGY CARE cannot be found generic in this case because it is too broad a term and Applicant's services identify only some of the treatments available to treat allergies.[18] Applicant's services are identified as "medical treatment of allergies," which must be read broadly to include all of the medical treatments referenced in the evidence. And, to the extent that Applicant is attempting to improperly narrow the scope of the identification by asserting it does not offer certain services, such an argument is unpersuasive because registration must be refused if, as here, the wording is generic for any of Applicant's identified services. *Cordua Rests.*, 118 USPQ2d at 1638 ("A registration is properly refused if the word is the

---

[17] *Id.* at 5, 17 TTABVUE 8.

[18] If that were the case, an applicant could avoid a finding of genericness merely by crafting an identification of goods or services strategically omitting some of the products or activities for which the term would otherwise be generic.

generic name of any of the goods or services for which registration is sought." (*quoting* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:57 (4th ed. 2016))). Here, the record establishes that the phrase ALLERGY CARE would be understood by the relevant public as the generic name for medical services for treating allergies, that is, Applicant's services.

In further support of registration, Applicant submitted third-party registrations comprising marks including the terms ALLERGY or CARE for various goods and services. But many of the registrations disclaim those words, do not contain both as in Applicant's mark, or do not use them in connection with medical or health care services. It is well settled that we must assess each application on its own record and we are not bound by the decisions of examining attorneys in other cases. *Cordua Rests.,* 118 USPQ2d at 1635; *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to [Applicant's] application, the PTO's allowance of such prior registrations does not bind the Board[.]"). Thus, the fact that the terms ALLERGY or CARE have been registered in other marks does not "bind the Board" in this case. *Nett Designs*, 57 USPQ2d at 1566. Besides, because of the significant differences between Applicant's mark and the third-party marks, we find that the third-party registrations submitted by Applicant are easily outweighed by the Examining Attorney's evidence that the phrase ALLERGY CARE is generic when used in connection with the identified medical and health care services.

In sum, we find that the phrase ALLERGY CARE is generic for the identified services. This does not end our inquiry, however, because Applicant's mark includes design and color elements and the phrase ALLERGY CARE in a stylized typeface. We thus turn to whether, given the background design, color, and stylization, the entire mark is capable of distinguishing Applicant's services, and whether the mark is entitled to registration on the Supplemental Register. In the event the mark is entitled to registration on the Supplemental Register, Applicant nevertheless must disclaim ALLERGY CARE. Generic matter must be disclaimed to permit registration on the Supplemental Register. *See In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (CCPA 1977) (Section 6 of the Trademark Act is equally applicable to the Supplemental Register.); *In re Carolyn's Candies, Inc.*, 206 USPQ 356, 360 (TTAB 1980) ("Section 6 of the Trademark Act of 1946, which provides for the disclaimer of 'unregistrable matter', does not limit the disclaimer practice to marks upon the Principal Register.").

Applicant argues that the combination of elements in the mark makes it registrable on the Supplemental Register:

> [T]he distinct commercial impression and presentation of Applicant's mark shows it is suitable for registration on the Supplemental Register. Applicant's mark appears in a red, horizontal oval with a blue and white border outlining the oval. Inside the oval in stacked formation appear the words "ALLERGY CARE" in stylized capital letters in white with a blue outline. All of these distinctive features make

> Applicant's mark a unique source identifier capable of becoming distinctive.[19]

The Examining Attorney disagrees, arguing that the background design, stylization, and color features of the mark are insufficient to support registration. Regarding the stylization of the wording, the Examining Attorney argues that "[s]tylized descriptive or generic wording is registrable only if the stylization creates a commercial impression separate and apart from the impression made by the wording itself."[20] Regarding the red, white, and blue oval design, the Examining Attorney argues that "[b]ackground designs in composite marks consisting of common geometric shapes, such as circles, ovals, squares, triangles, diamonds, and other geometric designs, are generally not regarded as marks for services absent a showing of distinctiveness in the design alone."[21]

The Examining Attorney's arguments relate only to registrability on the Principal Register, that is, whether the design is inherently distinctive or has acquired distinctiveness, not whether the design is capable of being a source indicator. It is well settled that stylized non-distinctive wording, common geometric shapes, and background designs are not regarded as indicators of origin unless they create a commercial impression separate from the other matter with which they are used, or if they are shown to have acquired distinctiveness.

> It is settled that a display of descriptive or otherwise unregistrable matter is not registrable on the Principal

---

[19] Applicant's Br., p. 7, 17 TTABVUE 10.

[20] Examining Attorney's Br., p. 10, 19 TTABVUE 10.

[21] *Id.* at 11.

> Register unless the design features of the asserted mark create an impression on the purchasers separate and apart from the impression made by the words themselves, or if it can be shown by evidence that the particular display which applicant has adopted has acquired distinctiveness.

*In re Guilford Mills Inc.*, 33 USPQ2d 1042, 1043 (TTAB 1994). *See also Cordua* , 118 USPQ2d at 1639; *In re Benetton Grp. S.p.A.*, 48 USPQ2d 1214, 1215-16 (TTAB 1998) (evidence of distinctiveness insufficient to establish a green rectangle background design is recognized as a trademark for clothing); *In re Anton/Bauer, Inc.*, 7 USPQ2d 1380, 1381 (TTAB 1988) (evidence of distinctiveness insufficient to establish parallelogram background designs are recognized as trademarks); *In re Sadoru Group, Ltd.,* 105 USPQ2d 1484, (TTAB 2012) (stylization of descriptive term does not create a separate and inherently distinctive impression). Nevertheless, because such stylized non-distinctive wording, common geometric shapes, and background designs may be registered on the Principal Register with a showing of acquired distinctiveness, they are capable of serving as indicators of source and also may be registered on the Supplemental Register.

Accordingly, the issue is not whether Applicant's mark is inherently distinctive or has acquired distinctiveness, but whether the mark is capable of serving as an indicator of source. As stated by the Board in a similar case:

> [C]ontrary to the Examining Attorney's arguments, we are not concerned at this time with whether or not the [background] design used by applicant creates a commercial impression apart from the text within or whether it functions as a service mark. Those questions must be reserved for such time as applicant may seek to register its design under the provisions of Section 2(f)

based on a claim of acquisition of secondary meaning, if such event should ever occur. Our only inquiry here is does the matter presented for registration have the capability of eventually functioning as a trademark.

*In re FSR Brokerage, Inc.*, 224 USPQ 794, 795 (TTAB 1984). Thus, the question is whether the stylization of the wording and the background design are capable of ever functioning as a mark.

As recited above, Applicant's mark is      . The description of the mark reads: "The mark consists of a red, horizontal oval with a white and blue border. Inside the oval in stacked formation are the words 'ALLERGY CARE' in stylized capital letters in white with blue outline." The colors red, blue and white are claimed as features of the mark.

Applicant's mark contains a combination of colors, borders, and stylized generic wording making it more than an ordinary geometric shape or stylization alone with no ability to indicate source. Indeed, common geometric shapes with simple embellishments have registered with adequate showings of acquired distinctiveness. *See, e.g., In re Raytheon Co.*, 202 USPQ 317, 319-20 (TTAB 1979) (evidence of record sufficient to establish acquired distinctiveness of a light-colored oval within a black rectangular carrier); *In re Serial Podcast, LLC*, 126 USPQ2d 1061, 1063 (TTAB 2018) (evidence of record sufficient to establish acquired distinctiveness of composite logos consisting of disclaimed generic word in rectangles with rounded corners). On this record, we cannot say that the combination of colors, borders, and stylization found

in Applicant's mark are commonly used or so lacking in creativity that it could never serve to distinguish Applicant's services from similar services offered by others. We thus find that the combination of colors, borders, and stylization in Applicant's mark are capable of distinguishing the source of Applicant's services. *See In re Vasco Metals Corp.*, 154 USPQ 191, 192 (TTAB 1967) ("[W]e cannot preclude the possibility that, under appropriate circumstances and conditions, [a merely descriptive term] may possess the capacity to distinguish an applicant's goods. And no matter how remote such a possibility may seem, it cannot be ignored and therefore disregarded.").

In conclusion, we find that the phrase ALLERGY CARE is generic for Applicant's identified services and must be disclaimed, but Applicant's entire mark featuring a combination of colors, borders, and stylization is entitled to registration on the Supplemental Register with a disclaimer of ALLERGY CARE.

**Decision**: The refusal to register Applicant's mark on the ground that ALLERGY CARE is generic is affirmed in the absence of a disclaimer. However, if Applicant submits a disclaimer of ALLERGY CARE to the Board within thirty days, the refusal to register will be set aside.[22] *See* Trademark Rule 2.142(g), 37 C.F.R. § 2.142.

---

[22] Applicant should submit a disclaimer in the following standardized format: No claim is made to the exclusive right to use "ALLERGY CARE" apart from the mark as shown.